No. 91,721

PANKRATZ IMPLEMENT COMPANY, *Appellee*,
v. Citizens National Bank, *Appellant*.
(130 P.3d 57)

210

Opinion filed March 17, 2006.

*John K. Pearson,* of Hinkle Elkouri Law Firm, L.L.C., of Wichita, argued the cause, and *J. Scott Pohl,* of the same firm, was with him on the briefs for appellant.

*Charles D. Lee,* of Martindell, Swearer & Shaffer, L.L.P., of Hutchinson, argued the cause, and *Arlyn Miller* and *John B. Swearer,* of the same firm, were with him on the briefs for appellee.

*Mary Patricia Hesse,* of Redmond & Nazar, L.L.P., of Wichita, was on the brief for *amicus curiae* Kansas Bankers Association.

*Melissa A. Wangemann,* Legal Counsel, Deputy Assistant Secretary of State, was on the brief for *amicus curiae* Kansas Secretary of State.

The opinion of the court was delivered by

DAVIS, J.: Pankratz Implement Co. (Pankratz) attempted to perfect its security interest in equipment sold to Rodger House. In filing with the Secretary of State, Pankratz spelled the debtor's name as *Roger* House. Citizens National Bank (CNB) later attempted to secure the same property using the debtor's correct

name, Rodger House. Rodger House filed for bankruptcy; Pankratz obtained relief from the bankruptcy stay order and filed suit against CNB in order to realize its security interest. The district court determined in accordance with recently enacted amendments to Article 9 of the Kansas Uniform Commercial Code (UCC) effective July 1, 2001, K.S.A. 2003 Supp. 84-9-101 *et seq.*, that Pankratz was entitled to summary judgment because use of the debtor's incorrect name was a minor error and not seriously misleading. The Court of Appeals reversed, concluding that the use of the debtor's incorrect name was seriously misleading. *Pankratz Implement Co. v. Citizens Nat'l Bank*, 33 Kan. App. 2d 279, 102 P.3d 1165 (2004). We granted Pankratz' petition for review and affirm the Court of Appeals.

## FACTS

The facts in this case are uncontroverted. On March 18, 1998, Rodger House purchased a Steiger Bearcat tractor from Pankratz. House signed a note and security agreement in favor of Pankratz using his correct name, Rodger House. Pankratz listed the debtor's name in the agreement as "Roger House" instead of "Rodger House." Pankratz, in turn, assigned its interest in the note and the collateral to Deere and Company (Deere). Deere then filed a financing statement with the Kansas Secretary of State on March 23, 1998, using the same misspelled name, Roger House.

On April 8, 1999, House executed a note and security agreement in favor of Citizens National Bank (CNB), from which House obtained a loan. House pledged as collateral, among other things, all equipment "that I now own and that I may own in the future." On March 4, 1999, CNB filed a financing statement with the Kansas Secretary of State using the correct name of the debtor, Rodger House.

On June 10, 2002, House filed a petition for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the District of Kansas. On July 1, 2002, Deere reassigned the House note and security interest to Pankratz. Pankratz obtained relief from the automatic stay pursuant to 11 U.S.C. § 362 (2000) and filed suit in

the district court against CNB seeking a declaratory judgment concerning its purchase money security interest.

*District Court*

Both parties moved for summary judgment. The district court identified the issue for resolution: "The sole issue in this case is whether the filing of a financing statement which misspells the debtor's name is insufficient to render a filed financing statement seriously misleading under the UCC and therefore ineffective as to other creditors . . . claiming a security interest in the same collateral."

The district court adopted the reasoning and legal principles set forth in the trial court's decisions in *In re Erwin*, 2003 WL 21513158 (Bankr. D. Kan. 2003) (unpublished opinion), and *In re Kinderknecht*, 300 Bankr. 47 (Bankr. D. Kan. 2003). Summary judgment was granted to Pankratz based upon the court's conclusion that the misspelled first name of the debtor was a minor error, not seriously misleading under K.S.A. 2003 Supp. 84-9-506.

*Court of Appeals*

The Court of Appeals first noted that "[o]n its face, to hold that a missing 'd' in a debtor's first name renders a financing statement 'seriously misleading' seems harsh," and that the misspelling would seem to fall under 84-9-506(a) as a minor error or omission that would not have an impact on the effectiveness of the financing statement. The court, however, determined that the ultimate inquiry was "one of whether a reasonably diligent searcher would find the prior security interest." 33 Kan. App. 2d at 281.

K.S.A. 2003 Supp. 84-9-506 states that a misspelling will not be considered seriously misleading if a search using the standard search logic, under the correct name, would turn up the financing statement. The Court of Appeals found that the "standard search logic" for a financing statement search found in K.A.R. 7-17-22 was not synonymous with the "temporary internet search logic" accessible at www.accesskansas.org. 33 Kan. App. 2d at 281. The Court of Appeals agreed with CNB that "the only searches that would have produced the Pankratz prior security interest for

'Roger House' would have been completed on the temporary internet search logic." 33 Kan. App. 2d at 282. Using the "standard search logic" provided by the Secretary of State under the name Rodger House did not disclose the prior security interest of Pankratz. Thus, the Court of Appeals concluded that the filing under the misspelled name of Roger House was seriously misleading. 33 Kan. App. 2d at 282.

The Court of Appeals relied upon the 10th Circuit Bankruptcy Appellate Panel's reversal of the bankruptcy court in *In re Kinderknecht*, 308 Bankr. 71 (B.A.P. 10th Cir. 2004), holding that the use of the debtor's nickname under the facts of the case was seriously misleading. The court adopted the reasoning in *Kinderknecht*, which was based largely on the Revised Article 9's stated goals of simplicity and avoiding needless litigation. See 308 Bankr. at 75-76.

The Court of Appeals further discussed the minor error rule, citing *Millennium Financial Services, LLC v. Thole*, 31 Kan. App. 2d 798, 74 P.3d 57 (2003), and determined that a search using the standard search logic under the debtor's correct name, Rodger House, would not disclose the prior security interest of Pankratz. K.S.A. 2003 Supp. 84-9-506 places the burden on the filing creditor to list the debtor correctly. The searching creditor is under no obligation to conduct searches under variants of the debtor's name. Thus, the error could not be considered a minor error. The district court's summary judgment in favor of Pankratz was reversed, and the case was remanded with directions to enter judgment for CNB. 33 Kan. App. 2d at 283.

## DISCUSSION AND ANALYSIS

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

Moreover, "[t]he interpretation of a statute is a question of law over which this court has de novo review." *Heckert Construction Co. v. City of Ft. Scott*, 278 Kan. 223, 225, 91 P.3d 1234 (2004).

The sole question presented for resolution on undisputed facts is one of law to be determined under recently enacted amendments to Article 9 of the UCC. Because our answer depends upon the interpretation of the amendments to the UCC, our standard of review is de novo. *Heckert,* 278 Kan. at 225. Although the general issue in this case has been litigated previously in Kansas courts, no Kansas court has addressed the issue since the Revised Article 9 became effective on July 1, 2001. Thus, the case presents an issue of first impression.

Pankratz argues that at the heart of the Court of Appeals decision lies a fundamental misunderstanding of the Revised Article 9 standard of the legal name requirement for financing statements regarding individual debtors set forth in K.S.A. 2003 Supp. 84-9-503(a)(5)(A). Pankratz also claims that the Court of Appeals misapplied the provisions of K.S.A. 2003 Supp. 84-9-506(c) regarding its safe harbor provisions. Before addressing these contentions it is helpful to set forth the complete text of the two statutory amendments involved in this case:

K.S.A. 2003 Supp. 84-9-503 provides:

"(a) **Sufficiency of debtor's name.** A financing statement sufficiently provides the name of the debtor:

(1) If the debtor is a registered organization, only if the financing statement provides the name of the debtor indicated on the public record of the debtor's jurisdiction of organization which shows the debtor to have been organized;

(2) if the debtor is a decedent's estate, only if the financing statement provides the name of the decedent and indicates that the debtor is an estate;

(3) if the debtor is a trust or a trustee acting with respect to property held in trust, only if the financing statement:

(A) Provides the name specified for the trust in its organic documents or, if no name is specified, provides the name of the settlor and additional information sufficient to distinguish the debtor from other trusts having one or more of the same settlors; and

(B) indicates, in the debtor's name or otherwise, that the debtor is a trust or is a trustee acting with respect to property held in trust; and

(4) if the debtors are married debtors jointly engaged in business and it is unclear whether a partnership exists, the financing statement may be filed in the names of the individual debtors;

(5) *in other cases:*

(A) *If the debtor has a name, only if it provides the individual or organizational name of the debtor; and*

(B) if the debtor does not have a name, only if it provides the names of the partners, members, associates, or other persons comprising the debtor." (Emphasis added.)

## K.S.A. 2003 Supp. 84-9-506 provides:

"(a) **Minor errors and omissions.** A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.

"(b) **Financing statement seriously misleading.** Except as otherwise provided in subsection (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with K.S.A. 2003 Supp. 84-9-503(a) and amendments thereto, is seriously misleading.

"(c) **Financing statement not seriously misleading.** If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with K.S.A. 2003 Supp. 84-9-503(a) and amendments thereto, the name provided does not make the financing statement seriously misleading.

"(d) **'Debtor's correct name.'** For purposes of K.S.A. 2003 Supp. 84-9-508(b) and amendments thereto, the 'debtor's correct name' in subsection (c) means the correct name of the new debtor."

Since our answer in this case depends upon the interpretation of the two above quoted statutes, it is also helpful to consider in our interpretation a cardinal principle of statutory interpretation:

"In construing statutes and determining legislative intent, several provisions of an act or acts, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony if possible. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted." *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003).

Our construction of the above statutes provides the following analysis under the facts of this case. K.S.A. 2003 Supp. 84-9-503(a)(5)(A) provides that a financing statement sufficiently provides the debtor's name only if the financial statement provides the individual name of the debtor. In this case, Pankratz used an incorrect name by misspelling the debtor's name in the financing

statement. Pankratz argues that the misspelled name was only a minor error under K.S.A. 2003 Supp. 84-9-506(a) and was not seriously misleading.

K.S.A. 2003 Supp. 84-9-506(a) provides that a financing statement "is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading." Except as otherwise provided in subsection (c) a financing statement that fails sufficiently to provide the name of the debtor in accordance with K.S.A. 2003 Supp. 84-9-503(a) is seriously misleading. Pankratz' use of the debtor's misspelled name failed to provide the individual name of the debtor in accord with K.S.A. 2003 Supp. 84-9-503(a); however, according to the safe harbor provisions of subsection 84-9-503(c), the error may not be seriously misleading.

K.S.A. 2003 Supp. 84-9-506(c) provides that

"[i]f a search of the records of the filing office under the debtor's correct name, *using the filing office's standard search logic,* if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with K.S.A. 2003 Supp 84-9-503(a) and amendments thereto, the name provided does not make the financing statement seriously misleading." (Emphasis added.)

Under such circumstances a search using the debtor's correct name would reveal the prior security interest of Pankratz with the misspelled debtor's name and its financing statement would not be seriously misleading.

However, the undisputed facts in this case establish that a search under the debtor's correct name *using the filing office's standard search logic* did not disclose Pankratz' financing statement with the debtor's misspelled name. The express provisions of K.S.A. 2003 Supp. 84-9-506(b) provide that "[e]xcept as otherwise provided in subsection (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with K.S.A. 2003 Supp. 84-9-503(a) and amendments thereto, is seriously misleading." Thus, Pankratz' financing statement using the misspelled name of the debtor, while prior in time, was seriously misleading, causing the Court of Appeals to direct that judgment be entered for CNB.

Our analysis involves a construction of the provisions of both statutes, *in pari materia,* and leads us to the conclusion that Pank-

ratz' filed financing statement was seriously misleading, confirming the Court of Appeals decision. We could end our discussion and conclude that the expressed provisions of the law support the decision of the Court of Appeals. However, Pankratz advances several arguments in support of its position that the misspelled name of the debtor is only a minor error not seriously misleading. Pankratz asserts that the name requirements are not sufficiently defined especially for individuals under the new amendments and that a careful reading of subsection (c) does not support the bright-line rule adopted by the Court of Appeals, *viz.*, that failing to meet the requirements of subsection (c) makes the financing statement seriously misleading. The object of Pankratz' arguments is to place upon the party claiming a superior lien the responsibility to conduct a diligent search of past records filed with the Secretary of State to determine whether a prior lien exists. If the name requirements of the debtor are not fixed and certain, the use of a nickname or a misspelled name on the financing statement filed with the Secretary of State may require just such a search on the part of the party claiming a superior lien.

On the other hand, if the legislature intended by its amended version of the UCC set forth above to fix and make certain the name of the debtor requirement, such a change shifts the responsibility of the one filing with the Secretary of State to follow the name requirement with the effect being that the party searching for prior liens on the same property may rely on the name used on the financing statement eliminating the need to conduct diligent searches. We believe that the language used by the legislature and the intent behind the adoption of the most recent amendments had the effect of shifting the responsibility of getting the name on the financing statement right to the filing party, thereby enabling the searching party to rely upon that name and eliminating the need for multiple searches using variations of the debtor's name. This would have the effect of providing more certainty in the commercial world and reducing litigation as was required prior to the amendments to determine whether an adequate search was made.

The facts in this case establish that two types of searches for prior liens were available to a creditor hoping to perfect his or her

lien upon specific property. The first is the temporary internet search logic found at www.accesskansas.org. The facts establish that a search using the debtor's name in this case would have disclosed Pankratz' financing statement with the misspelled name of the debtor. However, the provisions of K.A.R. 7-17-24, as set forth below, make it clear that such a search shall not constitute an official search by the Secretary of State.

"During the transition period of July 1, 2001 through June 30, 2006, public access to a database that produces search results beyond exact name matches may be provided by the secretary of state. The supplemental database [www.accesskansas.org.] shall not be considered part of the standard search logic and shall not constitute an official search by the secretary of state." K.A.R. 7-17-24.

The database provided a further disclaimer:

"Searches conducted on the internet are not official searches under Revised Article Nine of the Uniform Commercial Code. This search engine is intended to provide a more flexible search logic so as to identify UCC filings under the old law, which employed different name requirements. Therefore searches conducted on this page will not determine whether a name is seriously misleading under K.S.A. 84-9-506. If you want an official search using the correct and current search logic given in KAR 7-17-22, contact the Kansas Secretary of State's Office at (785) 296-4564."

The "standard search logic" noted in K.S.A. 2003 Supp. 84-9-506(c) and provided by the Secretary of State is the official and only search that determines whether a name is seriously misleading under K.S.A. 2003 Supp. 84-9-506. See K.A.R. 7-17-21 and 7-17-22.

Pankratz, in support of its first argument, acknowledges that under K.S.A. 2003 Supp. 84-9-506(c), a search of the records of the Secretary of State, using the debtor's correct name and the filing office's standard search logic, would not disclose his financing statement using the misspelled name of the debtor, Roger House. However, Pankratz argues that the Court of Appeals erred in concluding under these circumstances that the financing statement is seriously misleading. Pankratz believes that the correct interpretation of K.S.A. 2003 Supp. 84-9-506(c) is that of Professors Barkley and Barbara Clark in volume one of their treatise, The Law

of Secured Transactions Under the Uniform Commercial Code ¶ 2.09(1)(e), P.2-164 (2003):

" '[R]ead carefully, . . . § 9-506(c) provides only that a financing statement is not seriously misleading if, using standard search logic, a search under the debtor's correct name would reveal the statement containing the debtor's incorrect name. It does not provide that a financing statement is not seriously misleading *only* if a search using the debtor's correct name would reveal the statement containing the debtor's incorrect name in the circumstances. . . . [§ 9-506(c)] does not say that financing statements that do not satisfy subsection (c)'s "safe harbor" are seriously misleading and therefore ineffective. Thus . . . § 9-506(c) leaves open the possibility that an error in the debtor's name does not render the financing statement seriously misleading, even if a search using the debtor's correct name and standard search logic would not turn up the statement.' " (Quoting Jordan, Warren, and Walt, Secured Transactions in Personal Property, p. 59 [2000]).

The above observation quoted by Professors Clarks is correct in that the provisions of subsection (c) are positive in recognizing that if a search under the debtor's correct name discloses the financing statement filed with a minor error, then the minor error does not make the filed statement seriously misleading. It does not say that such a filed statement that is not disclosed using standard logic search is seriously misleading. If all we were dealing with was subsection (c), then there would be the possibility that an error in the filed financing statement not meeting the safe harbor provisions of subsection (c) would not render the financing statement seriously misleading. However, as more fully discussed below, consideration of both amendments *in para materia* rather than focusing exclusively on subsection (c) supports the opposite conclusion.

Pankratz relies heavily upon Professors Clarks' interpretation as it relates to the crux of its argument. Pankratz argues that there is then no bright-line standard and the ultimate determination regarding the effectiveness a filed financing statement with an incorrect name that is not disclosed under the provisions of subsection (c) must be resolved on a case-by-case basis. Thus, depending again upon the diligence of the search by the creditor claiming a superior interest by reason of his or her later filed statement, the case must be resolved through a judicial determination of whether a particular financing statement is "seriously misleading."

The answer to this argument lies in the consideration of the two amendments together and interpreted as a whole scheme adopted by the Kansas Legislature rather than to focus exclusively upon one section alone. The answer also depends upon the express language used in both amendments, as well as the intent of the legislature in the adoption of the changes enacted.

A reading of the provisions of K.S.A. 2003 Supp. 84-9-503 with the provisions of K.S.A. 2003 Supp. 84-9-506 makes clear that the safe harbor provision of K.S.A. 2003 Supp. 84-9-506(c) applies to both 84-9-506 and 84-9-503. "A financing statement sufficiently provides the name of the debtor . . . [i]f the debtor has a name, *only if it provides the individual or organizational name of the debtor.*" (Emphasis added.) K.S.A. 2003 Supp. 84-9-503(a)(5)(A). Referring to the case before us, the error in Pankratz' filed financing statement was the misspelling of the debtor's first name. Thus, Pankratz' financing statement failed to use the "name of the debtor" and therefore does not satisfy the provisions of 84-9-503(a). However, the provisions of K.S.A. 2003 Supp. 84-9-506(a) provide that "[a] financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading." Pankratz' financial statement has a minor error; under K.S.A. 2003 Supp. 84-9-506(b), if the financing statement "[e]xcept as otherwise provided in subsection (c) [safe harbor provision], . . . fails sufficiently to provide the name of the debtor in accordance with K.S.A. 2003 Supp. 84-9-503(a) and amendments thereto [only if the financing statement provides the name of the debtor], [it] is seriously misleading." The undisputed evidence establishes that Pankratz' financing statement did not satisfy the provisions of subsection (c), the safe harbor provisions, in that a search using debtor's correct name did not disclose Pankratz' statement.

Pankratz failed to satisfy the requirement of using the correct name of the debtor and thus did not satisfy the name requirements of 84-9-503(a)(5)(A). Nevertheless, minor errors will not destroy the effectiveness of that statement unless the errors make the statement seriously misleading. Pankratz' failing to meet the naming

requirements is seriously misleading except in the case where a search using the debtor's correct name discloses the defective financing statement. In this case it did not and therefore remains seriously misleading. K.S.A. 2003 Supp. 84-9-506(b).

Pankratz' second argument focuses on the naming requirements set forth in K.S.A. 2003 Supp. 84-9-503. Pankratz asks what constitutes a sufficient name, a term not defined in the statute. Pankratz argues there is no requirement that a legal name must be used and bolsters this argument by pointing out the differences in the statute's loose requirements for an individual name and the exactness of the requirements for an organizational name. Pankratz' attack is aimed at the conclusion that if there is no exactness required for the name placed upon the financing statement, a nickname or even a slight variation in the name used would satisfy K.S.A. 2003 Supp. 84-9-503. If this is the case, then it follows that the law would therefore require a case-by-case determination regarding the sufficiency of the name with the result that the creditor claiming a superior lien on the property would be required to conduct a diligent search using variations of the debtor's name before it could be said that the prior filed statement is ineffective.

Pankratz is correct that K.S.A. 2003 Supp. 84-9-503 provides no specific rule or guidance concerning what constitutes a sufficient debtor "name." The term "name," name of debtor, debtor's name, or "correct name" is not defined in Article 9. At the same time, the statute sets forth exact requirements for the name of registered organizations. According to Pankratz, the difference in language indicates a legislative "loud silence," which means that there is no specific mandate to use the individual debtor's legal name in all circumstances. If there are no requirements as to the individual name, errors in the debtor's name in a financing statement must be judged on a case-by-case basis and the very minor error in this case, misspelling the debtor's first name by leaving out a "d" in Rodger, is only a minor error under K.S.A. 2003 Supp. 84-9-506(a).

Pankratz, as well as the district court, in this case relied upon the recent United States Bankruptcy Court decision *In re Kinderknecht*, 300 Bankr. 47 (Bankr. D. Kan. 2003), and cases cited therein. In that case, Terry J. Kinderknecht granted defendants a

security interest in two farm implements, and they promptly filed financing statements on the collateral in the name "Terry J. Kinderknecht." Kinderknecht later filed a petition for Chapter 7 bankruptcy relief in his legal name "Terrance J. Kinderknecht," listing defendants as secured creditors. The trustee brought a strong-arm proceeding to set aside the security interests as not having been properly perfected in accordance with Kansas law.

The focal issue in the case involved the same amendments to the UCC that we deal with in this opinion; more specifically, the primary issue in *Kinderknecht* is the provision of K.S.A. 2003 Supp. 84-9-503 relating to the name of the debtor. The trustee argued that the name of the debtor means the debtor's legal name while the defendants' claimed that the debtor's name requirements are not defined and would include "Terry" instead of "Terrance." Neither a search using the standard search logic provided by the secretary of state's office nor a search using the more broad search method under Access Kansas with the name Terrance J. Kinderknecht disclosed the financing statement of defendants filed under the name of Terry J. Kinderknecht. Thus, much like in the present case, the trustee argued that the financing statement used by the defendants was seriously misleading.

The bankruptcy court noted:

"If the drafters of the Model Code and the Kansas Legislature intended to require that financing statements include debtors' legal names, they should have said so clearly in the test of Article 9.

. . . .

". . . Nothing in Revised Article 9 mandates a debtor's legal name . . . [and] [n]othing in Revised Article 9 requires that a legal name must be used in a financing statement. Therefore, a commonly used nickname may be a debtor's correct name and under § 9-506(c), if a search using a nickname and the filing office's standard search logic produces a financing statement, it is not misleading. This is the case here." *Kinderknecht*, 300 Bankr. at 51.

The court therefore denied the claim of the trustee and held that use of the individual name "Terry J. Kinderknecht" in the financing statements did not make the financing statements insufficient or seriously misleading.

The trustee in the *Kinderknecht* case filed a timely appeal and the parties consented to jurisdiction of the United States 10th Circuit Bankruptcy Appellate Panel without a hearing before the United States District Court for the District of Kansas. *In re Kinderknecht*, 308 Bankr. 71 (B.A.P. 10th Cir. 2004), interpreting Kansas law, reversed the bankruptcy judge, holding *inter alia* that for a financing statement to be effective under Kansas law, the secured creditor must list "an individual debtor . . . by his or her legal name, not by a nickname." 308 Bankr. at 75 (citing 84-9-502[a][1], 84-9-503[a][5][A], 84-9-506[b]). Its decision and reasoning are particularly helpful in resolving this case:

"This could be construed, as it was by the bankruptcy court, as allowing a debtor to be listed in a financing statement by his or her commonly-used nickname. But, we do not agree with that interpretation *because the purpose of § 89-4-503, as well as a reading of that section as a whole, leads us to conclude that an individual debtor's legal name must be used in the financing statement to make it sufficient under § 84-9-502(a)(1)* [which is simply the requirement of 'the name of the debtor' on a financing statement]." (Emphasis added.) 308 Bankr. at 75.

## The 10th Circuit reasoned that K.S.A. 2003 Supp. 84-9-503

"was enacted to clarify the sufficiency of a debtor's name in financing statements. The intent to clarify when a debtor's name is sufficient shows a desire to foreclose fact-intensive tests, such as those that existed under the former Article 9 of the UCC, inquiring into whether a person conducting a search would discover a filing under any given name. Requiring a financing statement to provide a debtor's legal name is a clear cut test that is in accord with that intent.

"Furthermore, § 84-9-503, read as a whole, indicates that a legal name should be used for an individual debtor. In the case of debtor-entities, § 84-9-503(a) states that legal names must be used to render them sufficient under § 84-9-502(a). Trade names or other names may be listed, but it is insufficient to list a debtor by such names alone. A different standard should not apply to individual debtors. The more specific provisions applicable to entities, together with the importance of naming the debtor in the financing statement to facilitate the notice filing system and increase commercial certainty, indicates that an individual debtor must be listed on a financing statement by his or her legal name, not by a nickname.

"Our conclusion that a legal name is necessary to sufficiently provide the name of an individual debtor within the meaning of § 84-9-503(a) is also supported by four practical considerations. First, mandating the debtor's legal name sets a clear test so as [to] simplify the drafting of financing statements. Second, setting a clear test simplifies the parameters of UCC searches. Persons searching UCC filings

will know that they need the debtor's legal name to conduct a search, they will not be penalized if they do not know that a debtor has a nickname, and they will not have to guess any number of nicknames that could exist to conduct a search. Third, requiring the debtor's legal name will avoid litigation as to the commonality or appropriateness of a debtor's nickname, and as to whether a reasonable searcher would have or should have known to use the name. Finally, obtaining a debtor's legal name is not difficult or burdensome for the creditor taking a secured interest in a debtor's property. Indeed, knowing the individual's legal name will assure the accuracy of any search that creditor conducts prior to taking its secured interest in property." 308 Bankr. at 75-76.

We believe the decision and reasoning of the 10th Circuit is sound and accurately reflects the legislative intent behind the adoption of new amendments to the UCC. Pankratz fails to harmonize what it calls a legislative silence in 84-9-503(a) with the specific provisions of 84-9-506. It is illogical to assert that the legislature would intend a rigorous requirement for business entity names and a vague, less rigorous standard for individual names, which would operate, by implication, as a kind of safe harbor, and then, in K.S.A. 2003 Supp. 84-9-506(c), expressly provide another safe harbor provision for the use of incorrect names on a filed financing statement.

The Kansas Secretary of State, in his *amicus* brief, supports the position taken in the *Kinderknecht* appeal by pointing out that the codified financial statement form, K.S.A. 2003 Supp. 84-9-521, requires the "debtor's exact full legal name." Moreover, the Official UCC Comment 2 to K.S.A. 2003 Supp. 84-9-503 stresses that "[t]he requirement that a financing statement provide the debtor's name is particularly important" and that "the actual individual or organizational name of the debtor on a financing statement is both necessary and sufficient." Because the primary purpose of a financing statement is to provide notice to third parties that the creditor has an interest in the debtor's property and the financing statements are indexed under the debtor's name, it is particularly important to require exactness in the name used, the debtor's legal name.

Finally, the Official UCC Comment 2 to K.S.A. 2003 Supp. 84-9-506 demonstrates the importance of the naming requirements as they relate to the concept of "seriously misleading":

"Subsections (b) and (c), which are new, concern the effectiveness of financing statements in which the debtor's name is incorrect. Subsection (b) contains the general rule: a financing statement that fails sufficiently to provide the debtor's name in accordance with Section [84-]9-503(a) is seriously misleading as a matter of law. Subsection (c) provides an exception: If the financing statement nevertheless would be discovered in a search under the debtor's correct name, using the filing office's standard search logic . . . then as a matter of law the incorrect name does not make the financing statement seriously misleading."

The purpose of the Revised Article 9 as a whole is the simplification of formal requirements, and the purpose of 84-9-506 in particular is to lessen the need for judicial hairsplitting (and, by implication, to move toward a bright-line rule). Harmonizing 84-9-506 with these purposes thus becomes the goal of any interpretation, despite the fact that other interpretations may be implied through omission in the statutory language. Pankratz argues that the legislature intended a case-by-case determination of "seriously misleading," based upon the absence of definitive language regarding the naming requirements for individuals in K.S.A. 2003 Supp. 84-9-503(a). Such an interpretation is contrary to the Comment's policy statement that the Revised Article 9 seeks to simplify filing requirements and to move away from judicial interpretation. Rather than judicial determinations, the Official UCC Comment 2 to K.S.A. 2003 Supp. 84-9-506 makes clear that

"subsection (a) is in line with the policy of this Article to simplify formal requisites and filing requirements. It is designed to discourage the fanatical and impossibly refined reading of statutory requirements in which courts occasionally have indulged themselves. . . . Subsection (b) contains the general rule: a financing statement that fails sufficiently to provide the debtor's name in accordance with Section 9-503(a) is seriously misleading as a matter of law. Subsection (c) provides an exception . . . ."

The few other jurisdictions that have had an opportunity to construe the amendments have also been in accord with the *Kinderknecht*/Court of Appeals reasoning. See *In re FV Steel and Wire Co.*, 310 Bankr. 390, 394 (Bankr. E.D. Wis. 2004) (holding that a "rule that would burden a searcher with guessing at misspellings and various configurations of a legal name" would decrease the certainty desirable in commercial transactions and that the burden of filing under the correct name is properly on the filer); *In re*

*Asheboro Precision Plastics, Inc.*, 2005 WL 1287743, *8 (Bankr. M.D.N.C. 2005) (unpublished opinion) ("Under Revised Article 9 and the underlying policy of simplifying financing statement searches" a financing statement is seriously misleading where a search under the correct name using standard search logic does not turn up the statement).

Finally, in determining legislative intent, the *amicus* brief filed by the Secretary of State proves instructive. The brief reinforces the notion, implied very strongly by the above discussion, that the intent of the filing requirements of Revised Article 9 is to shift the burden of filing correctly onto the filers and to allow searchers to rely on one search under the correct legal name of the debtor. Several experts who played a role in drafting and implementing the Revised Article 9 share this interpretation of the filing requirements of Revised Article 9.

Darrell W. Pierce, chair of the Article 9 Filing Project and member of the Article 9 Study Committee for the Permanent Editorial Board for the UCC, wrote that "[c]ase law that has served to protect filers at the expense of searchers by giving effect to filings not readily retrievable by a search will be overturned by Revised Article 9 . . . and, in doing so, obviates the need for complicated search logic and multiple name searches." Pierce, *Revised Article 9 of the Uniform Commercial Code: Filing System Improvements and Their Rationale*, 31 UCC L.J. 16, 17 (1998).

Harry Sigman sat on the Revised Article 9 Drafting Committee, and wrote that Article 9

"does not provide an absolute requirement of perfection. At the same time, it does not burden searchers with the obligation to dream up every potential error and name variation and perform searches under all possibilities. Revised Article 9 allows a searcher to rely on a single search conducted under the correct name of the debtor and penalizes filers only for errors that result in the nondisclosure of the financing statement in a search under the correct name." Sigman, *The Filing System Under Revised Article 9*, 73 Am. Bankr. L.J. 61, 73 (1999).

The *amicus* brief references several other experts, including Steven O. Weise, the ABA Advisor to the Article 9 Drafting Committee, and Carl Ernst, publisher of *The UCC Revised Article 9*

*Alert* (Ernst Publishing Co. LLC, March 2002). These comments run along similar lines as those mentioned above.

The Kansas Court of Appeals in its decision, the express provisions of the revised amendments read *in para materia*, and the Official UCC Comments are all in accord that the primary purpose of the revision of the name requirement is to lessen the amount of fact-intensive, case-by-case determinations that plagued earlier versions of the UCC, and to simplify the filing system as a whole. The object of the revisions was to shift the responsibility to the filer by requiring the not too heavy burden of using the legal name of the debtor, thereby relieving the searcher from conducting numerous searches using every conceivable name variation of the debtor. The effect of the revision is to provide more certainty in the commercial world and reduce litigation to determine whether an adequate search was done. The cases cited by Pankratz in support of its position mostly were decided prior to the adoption of the revisions. The more recent cases decided after the revisions of UCC Article 9 are in accord with the Court of Appeals' decision in this case.

Finally, the practical public policy considerations outlined by the 10th Circuit Bankruptcy Appellate Panel in *Kinderknecht*, and the opinions of several of the drafters of the Revised Article 9, while merely persuasive authority, support the decision of the Court of Appeals in this case. We conclude that such authority, as well as the express provisions of K.S.A. 2003 Supp. 84-9-503 and K.S.A. 2003 Supp. 84-9-506 construed *in pari materia*, demonstrate that Pankratz' filed financing statement was "seriously misleading."

For the first time on appeal, Pankratz argues that the court should evaluate this case using the *prerevision* "seriously misleading" standard, regardless of the court's interpretation of the naming requirements in the Revised Article 9. K.S.A. 2003 Supp. 84-9-705(c) provides:

"(c) **Pre-effective date filing in jurisdiction formerly governing perfection.** This act does not render ineffective an effective financing statement that, before this act takes effect, is filed and satisfies the applicable requirements for perfection under the law of the jurisdiction governing perfection as provided in K.S.A. 84-9-103 prior to the effective date of this act. However, except as other-

wise provided in subsections (d) and (e) and K.S.A. 2003 Supp. 84-9-706 and amendments thereto, the financing statement ceases to be effective at the earlier of:

(1) The time the financing statement would have ceased to be effective under the law of the jurisdiction in which it is filed; or

(2) June 30, 2006."

Neither party cites any authority as to why the issue should or should not be considered on appeal. Under the general rule, issues not raised before the trial court cannot be raised on appeal. *Dalmasso v. Dalmasso,* 269 Kan. 752, 765, 9 P.3d 551 (2000). However, when the question raised involves only a question of law and arises on proved or admitted facts, the appellate court may entertain the issue. *State v. Mincey,* 265 Kan. 257, 267, 963 P.2d 403 (1998). Nevertheless, there is a very good reason why the general rule instead of the exception should apply in this case.

The parties presented this issue to the district court under the new revised provision of the UCC, Article 9, K.S.A. 2003 Supp. 84-9-503 and K.S.A. 2003 Supp. 84-9-506. No mention was made to the district court that either party claimed the case should be decided on the basis of *prerevision* law. The district court decided this case on the basis of the new amended provisions. CNB appealed the district court decision to the Court of Appeals, and neither party claimed that consideration should be given to prerevision law. Only now after failing to prevail before the Court of Appeals does Pankratz advance the contention that the case should be considered on the basis of the prerevision instead of the new revised provisions of UCC, Article 9. The issue we consider is not a constitutional one and the provisions of the Revised Article 9 apply in the case we now consider. Under these circumstances, we determine that Pankratz' failure to raise this issue before the district court precludes it from raising the issue before this court. The decision of the Court of Appeals reversing the district court is affirmed. The decision of the district court is reversed, and the case is remanded to enter summary judgment on behalf of Citizens National Bank.

Affirmed.

LOCKETT, J., Retired, assigned.