(179 P.3d 466)
No. 97,677

STATE OF KANSAS, *Appellee*, v. LARRY GERVEASE BEE, JR., *Appellant*.

Opinion filed February 29, 2008.

*Rachel Pickering*, of Kansas Appellate Defender Office, for appellant.

*John R. Bullard*, county attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before CAPLINGER, P.J., MALONE, J., and LARSON, S.J.

LARSON, J.: In this appeal Larry Gervease Bee, Jr., argues the district court erred in not considering placement at the Labette Correctional Conservation Camp (Labette), other conservation camps, or a community immediate sanction center before revoking his probation and requiring him to serve the underlying sentence of 13 months' imprisonment.

In early 2004, Bee pled no contest and was found guilty of violating K.S.A. 2003 Supp. 65-4160(a). On May 10, 2004, the district court found Bee was subject to the terms of Senate Bill 123 (L. 2003 ch. 135, sec. 1; K.S.A. 2003 Supp. 21-4729) and placed him in a nonprison community corrections drug treatment program, with an underlying prison sanction of 13 months' imprisonment.

Approximately 1 month later, the State filed a motion to revoke Bee's probation. Accompanying the motion was an affidavit stating Bee had failed on two instances to report to his intensive supervision officer (ISO), Bee failed to enter impatient treatment at the Parallox Program on May 17, 2004, and Bee had admitted to using marijuana and tested positive for marijuana and amphetamine.

Warrants were issued which were served on November 26, 2005, and July 25, 2006. Service of the last warrant resulted in the State filing an amended motion to revoke probation on September 13, 2006, with an attached affidavit citing additional violations by Bee of continued failure to report to his ISO; failure to pay restitution,

court costs, fines, and fees; failure to cooperate in any plan for alcohol, drug, psychiatric, or psychological testing, counseling, treatment, or rehabilitation program; and failure to refrain from purchasing, possessing, or consuming any form of illegal drugs, alcohol, or intoxicating liquor or being in a place where it is sold or consumed.

The district court at a revocation hearing held September 18, 2006, granted the State's motion and revoked Bee's probation upon finding "failure to report, failure to enter into inpatient treatment, [and] testing positive for illegal drug usage." Bee was ordered to serve his prison sentence. The transcript of the revocation hearing does not show that the judge considered any lesser or alternative placement.

Bee has timely appealed the revocation of his probation. He maintains the district court erred because it was required under K.S.A. 2003 Supp. 21-4603d(g) to consider placing him at Labette, a conservation camp, or in a community intermediate sanction center prior to revoking probation and ordering him to serve his underlying prison sentence.

This argument raises interpretation of statute issues over which appellate courts exercise unlimited review. *State v. Brian*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

Bee's specific argument on appeal is that he falls under the language of K.S.A. 2003 Supp. 21-4603d(g), which requires the district court to *consider* nonprison sanctions before revoking probation. See *State v. Williams*, 24 Kan. App. 2d 447, Syl. ¶, 946 P.2d 98 (1997), which held:

"Under K.S.A. 1996 Supp. 21-4603d(a), a trial court is required, prior to the revocation of a nonprison sanction of a defendant whose offense is classified in the presumptive nonprison grid block of either sentencing guidelines grid, to consider placement of the defendant in the Labette Correctional Conservation Camp in the manner provided in the statute. A failure to do so will result in a reversal of the revocation and a remand for a new hearing."

The State argues Bee's revocation was properly determined without consideration of Labette or other sentencing alternatives under K.S.A. 2003 Supp. 21-4729 and K.S.A. 2003 Supp. 21-4603d and should not be disturbed on appeal.

The State specifically contends that parties sentenced under Senate Bill 123 are subject to K.S.A. 2003 Supp. 21-4729(f)(2), which provides that offenders whose community corrections sentences are revoked are "subject to the revocation provided in subsection (n) of K.S.A. 21-4603d." K.S.A. 2003 Supp. 21-4603d(n) is argued to govern Bee's revocation as it specifically states that "the defendant *shall* be subject to revocation of probation and the defendant *shall* serve the underlying prison sentence." (Emphasis added.)

The State further argues that K.S.A. 2003 Supp. 21-4603d(g) specifically excludes defendants sentenced under the provisions of K.S.A. 2003 Supp. 21-4729 (Senate Bill 123) because K.S.A. 2003 Supp. 21-4603d(g) when referring to consideration of Labette prior to revocation specifically states "whose offense does not meet the requirements of . . . 21-4729."

The possible tension between whether the unqualified requirement of imprisonment under K.S.A. 2003 Supp. 21-4603d(n) obviates the district court's obligation under K.S.A. 2003 Supp. 21-4603d(g) to consider Labette or other nonprison alternatives when revoking probation does not appear to have previously been precisely confronted or resolved by a Kansas appellate court.

It appears our Supreme Court could have reached this issue in *State v. Gumfory*, 281 Kan. 1168, 135 P.3d 1191 (2006). In *Gumfory*, the defendant had been sentenced to probation in a mandatory drug treatment program pursuant to K.S.A. 2005 Supp. 21-4729. Due to multiple violations of the terms of probation, including discharge from the drug treatment program, the district court determined that probation should be revoked. In its analysis, the Supreme Court cited the requirement that defendants discharged under K.S.A. 2005 Supp. 21-4729(f)(2) were subject to the revocation provisions under K.S.A. 2005 Supp. 21-4603d(n). Also, the court highlighted the clause mandating that imprisonment be imposed upon probation revocation. 281 Kan. at 1171-72. However, in considering whether the district court abused its discretion by ordering the defendant to prison, the court did not mention the fact that the district court's options were restricted to imprisonment under K.S.A. 2005 Supp. 21-4603d(n). Instead, the

Supreme Court noted that Labette and other nonprison sanctions were taken into account prior to the district court's ruling and found no abuse of discretion. 281 Kan. at 1175.

Bee argues that K.S.A. 2003 Supp. 21-4603d(g) mandates "strict compliance" with its provisions to consider Labette and other non-prison sanctions and harmless error does not apply, relying on *State v. Schick*, 25 Kan. App. 2d 702, 703-04, 971 P.2d 346 (1998), *rev. denied* 266 Kan. 1114 (1999). This may have been the rule prior to November 1, 2003, but our examination of all of the language in Senate Bill 123, enacted by the 2003 Kansas Legislature as L. 2003, ch. 135, secs. 1 through 11, indicates the State is correct in its argument and Bee is not.

Highly summarized, section 1 of Senate Bill 123, which became K.S.A. 2003 Supp. 21-4729, establishes a nonprison sanction of certified drug treatment for certain offenders who are sentenced on or after November 1, 2003. The qualified individuals are those convicted of K.S.A. 65-4160 or K.S.A. 65-4162, subject to offenses classified in subsections (a)(1) and (2) of 21-4729 (under which Bee qualified).

Subsection (f) of section 1, K.S.A. 2003 Supp. 21-4729(f), which is directly applicable to our facts and case, states:

"(f)(1) Offenders in drug abuse treatment programs shall be discharged from such program if the offender:

(A) Is convicted of a new felony, other than a felony conviction of K.S.A. 65-4160 or 65-4162, and amendments thereto; or

(B) has a pattern of intentional conduct that demonstrates the offender's refusal to comply with or participate in the treatment program, as established by judicial finding.

"(2) Offenders who are discharged from such program shall be subject to the revocation provisions of subsection (n) of K.S.A. 21-4603d, and amendments thereto."

Section 3 of Senate Bill 123 amended K.S.A. 2003 Supp. 21-4603d by adding subsection (n), which reads as follows:

"(n) Except as provided by subsection (f) of K.S.A. 21-4705, and amendments thereto, in addition to any of the above, for felony violations of K.S.A. 65-4160 or 65-4162, and amendments thereto, the court shall require the defendant who meets the requirements established in K.S.A. 21-4729, and amendments thereto, to participate in a certified drug abuse treatment program, as provided in K.S.A.

2003 Supp. 75-52,144, and amendments thereto, including but not limited to, an approved after-care plan. If the defendant fails to participate in or has a pattern of intentional conduct that demonstrates the offender's refusal to comply with or participate in the treatment program, as established by judicial finding, the defendant *shall be subject to revocation of probation and the defendant shall serve the underlying prison sentence* as established in K.S.A. 21-4705, and amendments thereto. For those offenders who are convicted on or after the effective date of this act, upon completion of the underlying prison sentence, the defendant shall not be subject to a period of postrelease supervision. The amount of time spent *participating in such program shall not be credited as service on the underlying prison sentence.*" (Emphasis added.)

Under the language of K.S.A. 2003 Supp. 21-4729(f), it appears under subparagraph (1)(B) that Bee's "refusal to comply with or participate in the treatment program" is the equivalent of being discharged from the program. In addition, the 2003 addition of subsection (n) to K.S.A. 2003 Supp. 21-4603d states that "the defendant *shall* be subject to revocation of probation and the defendant *shall* serve the underlying prison sentence" if the defendant fails to participate in or has a pattern of intentional conduct that demonstrates the offender's refusal to comply with or participate in the treatment program. (Emphasis added.) The district court clearly found in ordering the service of the underlying sentence that Bee had failed to abide by the drug treatment conditions imposed by community corrections, including failure to appear at appointments, evaluations, or entry into the required drug programs.

We hold that pursuant to K.S.A. 2003 Supp. 21-4603d(n), the district court was statutorily authorized to revoke Bee's probation. And, as we stated above, the clear statutory language required Bee to serve the underlying prison sentence upon his probation being revoked. K.S.A. 2003 Supp. 21-4603d(n) does not allow for any alternative sentences or considerations; it directs that if noncompliance with the nonprison drug treatment program is found by the district court, "the defendant *shall* serve the underlying prison sentence."

While the avoidance of an initial prison sentence in order to obtain drug treatment is allowed under Senate Bill 123, the failure to take advantage of the nonprison drug treatment program or the

discharge from such a program mandates the service of the underlying prison sentence.

We have followed our canons of statutory construction of giving ordinary words their ordinary meaning, *State v. McElroy*, 281 Kan. 256, 262, 130 P.3d 100 (2006), and in determining the legislative intent of Senate Bill 123, we have considered the language of section 1, K.S.A. 2003 Supp. 21-4729(f), *in pari materia* with the language of the amendment of K.S.A. 2003 Supp. 21-4603d(n) found in section 3 and in so doing brought them into workable harmony. See *Pankratz Implement Co. v. Citizens Nat'l Bank*, 281 Kan. 209, 215, 130 P.3d 57 (2006).

We have previously stated that Bee contends we are bound by our 1997 decision in *Williams*, 24 Kan. App. 2d 447. But *Williams* was distinguished in *State v. Adams*, 29 Kan. 589, 30 P.3d 317, *rev. denied* 272 Kan. 1419 (2001), in a manner that is consistent with the result we reach in this case.

The district court in *Adams* had revoked probation and sentenced Adams to prison after his conviction for aggravated escape while on community corrections. The aggravated escape from custody resulted in a sentencing grid classification of presumptive probation; however, pursuant to then K.S.A. 2000 Supp. 21-4603d(a) (see K.S.A. 2003 Supp. 21-4603d[f]), the district court had authority to order imprisonment without effecting a departure, even if the classification of the new offense presumed a nonprison sentence.

Adams argued the court erred in failing to consider placement at Labette prior to revoking probation and imposing incarceration. Our *Adams'* opinion reasoned that "Adams' imprisonment sentence for aggravated escape from custody was not a departure and was the imposition of a presumptive sentence. See *State v. Burrows*, 23 Kan. App. 2d 342, Syl. ¶ 1, 929 P.2d 1391, *rev. denied* 261 Kan. 1087 (1997)," and held it would be inconsistent to require the court to consider placement at Labette prior to revoking Adams' probation. 29 Kan. App. 2d at 592-93.

In *Adams*, the district court acquired the statutory authority to impose a prison sentence for a new felony committed while on probation, but in our case K.S.A. 2003 Supp. 21-4603d(n) une-

quivocally mandates that the defendant serve the underlying sentence where defendant's noncompliance with drug treatment is established by a judicial finding.

It would be completely inconsistent to require a district court to give consideration to a nonprison placement under K.S.A. 2003 Supp. 21-4603d(g) where the district court has the unqualified obligation to order the defendant to prison under K.S.A. 2003 Supp. 21-4603d(n). We hold the district court was not obligated to consider Labette or a nonprison placement prior to revoking Bee's probation and compelling him to serve his underlying sentence.

This result is also justified by our rule of construction that where a possible conflict exists between a general and special statute the directions of the more specific legislation should control absent some indication that the legislature intended otherwise. See *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1274, 136 P.3d 457 (2006). Here, the result dictated by K.S.A. 2003 Supp. 21-4603d(n) specifically must be followed in situations such as the case before us where a district court found the defendant failed to comply with probationary drug treatment under K.S.A. 2003 Supp. 21-4729(f), which directs the court to the action required under K.S.A. 2003 Supp. 21-4603d(n). There is broader language in K.S.A. 2003 Supp. 21-4603d(g) which would require Labette and other nonprison sanctions to be considered, but it is more general than the specific language in K.S.A. 2003 Supp. 21-4729(f) and K.S.A. 2003 Supp. 21-4603d(n).

Bee argues that the district court erred in failing to follow general language in K.S.A. 2003 Supp. 21-4603d(g) requiring consideration of Labette or other nonprison sanction before sentencing him to prison. As we earlier said, the State contends Bee mistakenly applies the provisions of K.S.A. 2003 Supp. 21-4603d(g) because this provision "specifically excludes defendants sentenced under the provisions of K.S.A. 21-4729 (Senate Bill 123). K.S.A. 21-4603d(g) when referring to consideration of Labette conservation camp prior to revocation, specifically states [it applies to persons] 'whose offense does not meet the requirements of . . . 21-4729.' "

The language of K.S.A. 2003 Supp. 21-4603d(g) was amended by the 2003 Kansas Legislature and may most easily be analyzed

by showing the changes and language that was not altered in subsection (g) made by L. 2003, ch. 135, sec. 3, which reads as follows:

"(g) Prior to imposing a dispositional departure for a defendant whose offense is classified in the presumptive nonprison grid block of either sentencing guideline grid, prior to sentencing a defendant to incarceration whose offense is classified in grid blocks 5-H, 5-I or 6-G of the sentencing guidelines grid for nondrug crimes or in grid blocks 3-E, 3-F, 3-G, 3-H, *or* 3-I, ~~4-E or 4-F~~ of the sentencing guidelines grid for drug crimes, *prior to sentencing a defendant to incarceration whose offense is classified in grid blocks 4-E or 4-F of the sentencing guideline grid for drug crimes and whose offense does not meet the requirements of section 1* [K.S.A. 2003 Supp. 21-4729], *and amendments thereto, prior to revocation of a nonprison sanction of a defendant whose offense is classified in grid blocks 4-E or 4-F of the sentencing guideline grid for drug crimes and whose offense does not meet the requirements of section 1* [K.S.A. 2003 Supp. 21-4729], *and amendments thereto,* or prior to revocation of a nonprison sanction of a defendant whose offense is classified in the presumptive nonprison grid block of either sentencing guideline grid or grid blocks 5-H, 5-I or 6-G of the sentencing guidelines grid for nondrug crimes or in grid blocks 3-E, 3-F, 3-G, 3-H~~,~~ *or* 3-I, ~~4-E or 4-F~~ of the sentencing guidelines grid for drug crimes, the court shall consider placement of the defendant in the Labette correctional conservation camp, conservation camps established by the secretary of corrections pursuant to K.S.A. 75-52,127, and amendment thereto or a community intermediate sanction center. Pursuant to this paragraph the defendant shall not be sentenced to imprisonment if space is available in a conservation camp or a community intermediate sanction center and the defendant meets all of the conservation camp's or a community intermediate sanction center's placement criteria unless the court states on the record the reasons for not placing the defendant in a conservation camp or a community intermediate sanction center."

The italicized language that was added and upon which the State relies is simply not applicable to Bee's circumstances as his offense was classified in grid block 4-H and his offense *did* meet the requirements of section 1 (K.S.A. 2003 Supp. 21-4729).

Nevertheless, there is language in subparagraph (g) that remained unchanged which can be argued to apply to Bee's situation. This language follows the italicized language and reads:

"[O]r prior to revocation of a nonprison sanction of a defendant whose offense is classified in the presumptive nonprison grid block of either sentencing guideline grid . . . the court shall consider placement of the defendant in the Labette Correctional Conservation Camp, conservation camps established by the secretary of corrections pursuant to K.S.A. 75-52,127, and amendments thereto or a community intermediate sanction center." K.S.A. 2003 Supp. 21-4603d(g).

Bee's 4-H classification places him in the presumptive nonprison grid block of the drug sentencing guideline and he therefore arguably would remain subject to the requirement for the court to consider Labette and other nonprison sanctions prior to his being incarcerated.

We do not believe this is the result the Kansas Legislature intended when it enacted Senate Bill 123. As we have previously set forth in great detail, the interaction of the language of section 1 (K.S.A. 2003 Supp. 21-4729) and its specific reference in subparagraph (f)(2) to the addition in section 3 amending K.S.A. 2003 Supp. 21-4603d to add subparagraph (n) makes it clear that the failure or refusal to participate in treatment programs does not require a district court to consider different nonprison sanctions such as Labette and subsection (n) specifically states that such a defendant "shall be subject to revocation of probation and the defendant shall serve the underlying prison sentence."

In so ruling, we continue the construction of the two statutes as we have previously explained and we also apply the specific language of subsection (n) in 21-4603d as opposed to the more general language of subsection (g).

The enactment of subsection (n) as a part of K.S.A. 2003 Supp. 21-4603d in effect revises an existing law, and we are directed by our rules of construction to presume that the legislature intended to change the law as it existed prior to the amendment. *McElroy*, 281 Kan. at 263.

For all the reasons we have set forth, we hold the district court did not err in sentencing Bee to prison without considering Labette or other nonprison sanctions.

Affirmed.