Alan D. Weber Allen County Counselor Allen County Courthouse One N. Washington Iola, Kansas 66749 Charles H. Apt III Iola City Attorney 219 South Street Iola, Kansas 66749
Dear Mr. Weber and Mr. Apt:
As Allen County Counselor and Iola City Attorney, you jointly ask the following question: "When a county has elected to create an ambulance service taxing district under the provisions of [K.S.A.] 65-6118, are other municipalities within the county prohibited from operating their own ambulance service independent of the county?"
You inform us of the following factual situation:
 "Currently, the Allen county commission provides ambulance services to the citizens of Allen county having organized an Ambulance Service Taxing district pursuant to K.S.A. 65-6118. Originally, Allen county obtained the Emergency Medical Services (EMS) license as required by law, purchased the ambulances and equipment and then contracted with the cities of Iola, Moran and Humboldt to provide the ambulance personnel to serve their respective cities and the surrounding areas. At no time did any of the cities possess their own EMS licenses. The cities were compensated for their efforts by receiving the revenues generated by the ambulance runs they made and by receiving a portion of the tax revenues generated by the ambulance taxing district. The county did the billing for all the ambulance runs and retained a percentage of the receipts as compensate [sic] for its billing efforts."
Recently, the Allen County commissioners decided to consolidate all ambulance service operations under the their authority. As a part of that process Allen County took over the personnel and ambulance service operations of Humboldt and Moran. However, Iola, not wanting to combine its ambulance service operation with the county operation, also recently obtained its own ambulances and EMS license, and now operates its own independent ambulance service.
Currently, the City of Iola and Allen County are at odds over whether a city may operate an independent ambulance service within a county-established ambulance service taxing district.
The city relies on K.S.A. 65-6113(a) that authorizes the governing body of any municipality[1] to establish, operate and maintain an emergency medical service or ambulance service financed through the levy of an annual tax.
The county relies on K.S.A. 65-6118 that authorizes a county furnishing ambulance services to create an ambulance service taxing district if the county determines that such service can best be provided by the creation of such a district.
Both K.S.A. 65-6113(a) and K.S.A. 65-6118 were enacted at the same time as part of the Emergency Medical Services Act,[2] and therefore must be construed in pari materia.[3] The purpose of the Act is to assure a uniform standard of care and treatment for those requiring emergency medical services.[4] While there are uniform ambulance service standards,[5] the Act recognizes that every municipality or region may choose to provide emergency medical service under the auspices of local control;[6] and the Act may not be construed as granting an exclusive territorial right to operate an ambulance service.[7] Double taxation is specifically addressed in the Act,[8]
and a county commission is not given authority to replace existing districts or to prohibit the establishment of new districts.
Neither the city nor the county appear to have considered K.S.A.65-6113(d) which points toward the answer to the question posed. That section first prohibits a county from providing ambulance service in any part of the county receiving ambulance service.[9] For reimbursement purposes, the section then distinguishes between a taxing district within a county that provided ambulance service on the effective date of the EMS Act and one that establishes an ambulance service on or after the effective date of the act, i.e., April 14, 1988:[10]
 "[A]ny taxing district establishing ambulance service in any part of a county under the provision of this act on or after the effective date of this act shall not be entitled to receive reimbursement pursuant to this subsection until a final order of the emergency medical services board ordering such reimbursement is issued follow the furnishing of notice and an opportunity for a hearing to the interested parties. . . ."[11]
By referring to the establishment of an ambulance service by a taxing district, such as a city, after the effective date of the act, K.S.A.65-6113(d) implicitly sanctions a municipally operated ambulance service within a county that has established a county ambulance service pursuant to K.S.A. 65-6118. Responding directly to your question, when a county has elected to create an ambulance service taxing district under the provisions of K.S.A. 65-6118, other municipalities within the county are not prohibited from creating and operating their own ambulance service independent of the county.
Sincerely,
 Stephen N. Six Attorney General
 Camille Nohe Assistant Attorney General
SNS:MF:CN:jm
[1] "`Municipality' means any city, county, township, fire district or ambulance service district." K.S.A. 65-6112(p).
[2] L. 1988, Ch. 261, §§ 1 through 48. An amendment to K.S.A.65-6113(b) by L. 1990, Ch. 66. § 45(b) does not affect any issue raised in this opinion.
[3] When construing statutes and determining legislative intent, various provisions of an act must be considered in pari materia with a view of reconciling and bringing them into workable harmony if possible.Pankratz Implement Co. v. Citizens Nat'l Bank, 281 Kan. 209, 215
(2006).
[4] See K.S.A. 65-6111 regarding powers and duties of the Emergency Medical Services Board.
[5] K.S.A. 65-6128.
[6] K.S.A. 65-6113.
[7] K.S.A. 65-6127(c).
[8] K.S.A. 65-6113(d).
[9] "In the case of a county, the board of county commissioners shall not provide ambulance service under the provisions of this act in any part of the county which receives ambulance service, . . ."
[10] L. 1988, Ch. 261.
[11] Emphasis added.