## In re SERVICE LAWN & POWER, INC., Debtor.

### Scott N. BROWN, Jr., Trustee, Plaintiff,

### v.

### BELARUS MACHINERY, INC., Defendant.

**Bankruptcy No. 1–86–02500.**

**Adv. No. 1–87–0002.**

United States Bankruptcy Court, E.D. Tennessee, S.D.

Jan. 22, 1988.

Harry R. Cash, Chattanooga, Tenn., for plaintiff.

Fred T. Hanzelik, Chattanooga, Tenn., for defendant.

### MEMORANDUM

JOHN C. COOK, Bankruptcy Judge.

Acting as a hypothetical lien creditor under 11 U.S.C.A. § 544(a)(1) (West Supp.

---

1987), the trustee seeks to avoid the lien of Belarus Machinery, Inc. (herein Belarus) on certain collateral securing a note of the debtor, Service Lawn & Power, Inc.[1] The trustee contends that the security interest of Belarus in the collateral is unperfected due to defects in financing statements filed by Belarus. Specifically, the trustee argues that the financing statements do not properly list the debtor's name and are not signed by the debtor as required by Tenn. Code Ann. § 47–9–402 (Supp.1987)

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) and (B) (West Supp.1987).

I

The corporate debtor, Service Lawn & Power, Inc., purchased seven tractors and various equipment parts from Belarus on or about July 11, 1986. The debtor, through its president, Charles F. Weir, and its secretary, Marqueta Joann Weir, executed a security agreement giving Belarus a purchase money security interest in the seven tractors and equipment parts. On August 21, 1986, Belarus filed two financing statements with the Secretary of State of Tennessee in an effort to perfect its security interest. In the box provided for listing the name and address of the debtor(s), both financing statement forms contained the following:

Weir, Charles F. and

Weir, Marqueta Joann d/b/a Service Lawn & Power, Inc.

1021 Decatur Pike

Athens, Tennessee 373703

Both financing statement forms contained two lines at the bottom of the form for

"signature(s) of debtor(s)" and were set out on the forms as follows:

By _____

The top signature line on both of the financing statements contained the signature of "Marqueta Joann Weir." The bottom signature line next to the printed word "By" on both financing statements contained the signature of "Charles F. Weir" followed by the handwritten notation "Pres."

The state filing officer indexed both financing statements only under the name Charles F. Weir. Consequently, a creditor who attempted to search the state index to discover whether Service Lawn & Power, Inc. had given a security interest in the property here involved would not have found such a financing statement listed under that name.

The indexing under the name Charles F. Weir was in accordance with the state filing policy in effect at that time. Where a financing statement was received listing multiple debtors, the state filing officer indexed the financing statement only in the name of the first debtor listed unless there was a specific request that the statement be cross-indexed under all debtors listed.[2] There was no evidence that such a request was made in this case. Moreover, the evidence revealed that for filing purposes, the state filing officer has always treated an individual doing business under a trade name as one debtor. Where such a listing occurs in a financing statement, the filing officer only indexes the financing statement under the individual's name.

---

1. Title 11, U.S.C.A. § 544(a)(1) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple

contract could have obtained such a judicial lien, whether or not such a creditor exits.

2. According to a representative of the Secretary of State's office, the policy changed on August 22, 1986. Subsequent to that date and continuing to the present, the state filing office rejects financing statements listing multiple debtors. Following rejection, the filing officer notifies the filing party that along with submission of an additional fee for each statement, separate financing statements must be filed for each debtor in order to obtain indexing under each debtor's name.

On January 2, 1987, Belarus filed a proof of claim for $64,654.24. The proof of claim stated that Belarus had a perfected security interest in the seven tractors and equipment parts. Subsequently, the trustee brought this adversary action challenging the secured status of Belarus.[3]

## II

## A

The purpose of a financing statement is to afford notice to creditors that a security interest may exist. *Bell v. Ameritrust Co. (In re Moore),* 21 B.R. 898 (Bankr.E.D. Tenn.1982); *Carter v. Greene County Bank (In re Wilhoit),* 6 B.R. 574 (Bankr.E. D.Tenn.1980); *American City Bank v. Western Auto Supply,* 631 S.W.2d 410 (Tenn.Ct.App.1981). To this end, § 9–402(1) of the Uniform Commercial Code enacted in Tennessee at Tenn.Code Ann. § 47–9–402(1) (Supp.1987) requires only limited information in a financing statement. In relevant part that section provides:

> (1) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.

Although the formal requisites of a financing statement appear to be quite simple, inevitably mistakes do occur in preparing such statements. Where mistakes occur, the erring party may find relief under § 9–402(8) of the Uniform Commercial Code enacted in Tennessee at Tenn.Code Ann. § 47–9–402(8) (Supp.1987). That section provides:

> (8) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

Minor mistakes in financing statements are not fatal because Article 9 of the Uniform Commercial Code was intended to provide merely a system of notice filing. The financing statement was designed to be a statement filed publicly which would alert credit searchers that a certain security agreement may exist. Thus, even though there may be errors or deficiencies in descriptions, addresses, names, and even signatures, such errors will not destroy the effectiveness of a financing statement so long as they do not frustrate the underlying purpose of the filing requirements in affording notice to creditors of the possible existence of security interests. *See* J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code,* § 23–16 (2d ed. 1980). In each case, the determination whether or not an error in a financing statement is "seriously misleading" is a factual one which should be made by the trial court.[4] *Towers v. B.J. Holmes Sales Co. (In re West Coast Food Sales, Inc.),* 637 F.2d 707 (9th Cir.1981); *In re Vaughan,* 4 U.C.C.Rep.Serv. 61 (Bankr. W.D.Mich.1967).

## B

Much litigation has arisen due to defects in listing the debtor's name on financing statements. *See generally* Annotation, *Sufficiency of Designation of Debtor or Secured Party in Security Agreement or Financing Statement Under UCC § 9–402,* 99 A.L.R.3d 478 (1980). Not surprisingly, many of the cases in this area have dealt with financing statements erroneously filed in a trade name of the debtor rather than in the debtor's true name. In those situations many courts have found such errors seriously misleading, reasoning that where a financing statement is filed and indexed under the debtor's trade name rather than the debtor's true name, a creditor looking for security interests under the true debtor's name cannot be expected to discover the financing statement indexed

---

**3.** The collateral consisting of seven tractors and equipment parts has been sold by the trustee at auction. The proceeds of the sale are being held by the trustee subject to the outcome of this litigation.

**4.** The draftsmen of the Uniform Commercial Code may have intended that § 9–402(8) contain two conditions as it relates to errors in financing statements. One condition is that the error be "minor" and the other is that the error not be "seriously misleading." Resolving this interpretive difficulty, discussed more fully in J. White and R. Summers, *supra* § 23–16, at 954, is not required in this case.

under the debtor's trade name. *See e.g., Northern Commercial Corp. v. Friedman (In re Leichter),* 471 F.2d 785 (2d Cir.1972) (trade name Landman Dry Cleaners, true name Matthew R. Leichter); *Citizens Bank v. Ansley,* 467 F.Supp. 51 (M.D.Ga. 1979) (trade name Ansley Farms, true name Emory Ansley); *In re Firth,* 363 F.Supp. 369 (M.D.Ga.1973) (trade name National Photocopy Equipment Co., true name James A. Firth); *Bank of Mississippi, Tupelo v. Pongetti (In re Hill),* 363 F.Supp. 1205 (N.D.Miss.1973) (trade name Carolyn's Fashions, true name Mary Carolyn Hill); *In re White,* 51 B.R. 514 (Bankr.E.D.Tenn. 1985) (trade name Kalthoff Heating & Cooling, true name Joseph White); *In re Moore,* 21 B.R. 898 (Bankr.E.D.Tenn.1982) (trade name Moore's Welding & Mining Co., true name Charlie Moore); *In re Wilhoit,* 6 B.R. 574 (Bankr.E.D.Tenn.1980) (trade name Central Tire and Supply, true name Hugh F. Wilhoit); *Kreling v. First Nat'l. Bank & Trust Co. of Mich. (In re Webster),* 20 U.C.C.Rep.Serv. 802 (Bankr. W.D.Mich.1976) (trade name Roger's Country Kitchen, true name Roger H. Webster); *In re Wishart,* 10 U.C.C.Rep.Serv. 1296 (Bankr.W.D.Mich.1972) (trade name Wishart Equipment Co., true name Horace Wishart); *In re Merrill,* 9 U.C.C.Rep.Serv. 757 (Bankr.D.C.Neb.1971) (trade name Reliable TV Service, true name Thomas Merrill); *In re Levins,* 7 U.C.C.Rep.Serv. 1076 (Bankr.E.D.N.Y.1970) (trade name F & F Luncheonette, true name Robert L. Levins); *In re Osborn,* 6 U.C.C.Rep.Serv. 227 (Bankr.W.D.Mich.1969) (trade name H & M Distributing Co., true name Howard Henry Osborn).

On the other hand, there does appear to be a recognized exception to the rule that to be effective a financing statement must be filed in the debtor's true name rather than the debtor's trade name. It has been stated that even though a financing statement is erroneously filed under the debtor's trade name, such error is not seriously misleading where the debtor's trade name and the debtor's true name are so substantially similar that a diligent creditor upon searching under the true name would likely discover the filing.[5] *In re Platt,* 257 F.Supp. 478 (E.D.Pa.1966) (trade name, Platt Fur Seal Co., true name Henry Platt); J. White and R. Summers, *supra,* § 323–16 at 957–58; *contra, Citizens Bank v. Ansley,* 467 F.Supp. at 54, and *In re Wishart,* 10 U.C.C.Rep.Serv. at 1297.

In *Brushwood v. Citizens Bank of Perry (Matter of Glasco),* 642 F.2d 793 (5th Cir. 1981), a decision on an erroneous financing statement turned upon the unique facts presented in that case. The majority in that split decision held that a filing under the trade name "Elite Boats, Division of Glasco, Inc.," instead of the legal corporate name, "Glasco, Inc.," was not seriously misleading. The court pointed out that the debtor did business in only one name, that being "Elite Boats, Division of Glasco, Inc." The majority went on to conclude that a filing under the only name by which the debtor conducted business was not misleading because a reasonably prudent creditor would have requested the Secretary of State to conduct a lien search under the name "Elite Boats" in addition to the name "Glasco, Inc."[6] *Accord, National Bank v. West Texas Wholesale Supply Co. (In re McBee),* 714 F.2d 1316 (5th Cir.1983) (filing under trade name sufficient in view of particular facts presented); *contra, Pearson v. Salina Coffee House, Inc.,* 831 F.2d 1531 (10th Cir.1987) (applying Kansas law court rejects holdings in *Glasco* and *McBee*).

---

**5.** This same reasoning has been applied in situations where an erroneous name listed in a financing statement was substantially similar to the debtor's true name. *See, e.g., Corwin v. RCA Corp. (In re Kitty Hawk Television Corp.),* 516 F.2d 24 (6th Cir.1975) (filing under name, Kitty Hawk Broadcasting Corporation, rather than debtor's name, Kitty Hawk Television Corporation, not seriously misleading); *In re Southern Supply Co. of Greenville, N.C.,* 405 F.Supp. 20 (E.D.N.C.1975) (filing under name, Southern Supply Co., rather than debtor's name, Southern Supply Company of Greenville, N.C., Inc., not seriously misleading).

**6.** The majority distinguished those cases where courts have found a financing statement filed under the trade name of an individual debtor insufficient to perfect a security interest. The majority explained:

[A] single debtor is necessarily held out to the credit community under two names, that of the individual and of the business. The individual's credit for personal needs is unrelated

Another example of a financing statement error being evaluated in a specific factual context is found in *In re Jones,* 11 U.S.C.Rep.Serv. 249 (Bankr.W.D.Mich. 1972). In that case, the bankruptcy court was faced with a security agreement filed in lieu of a financing statement which listed the debtor's name, "DBA. The Tape Shack, Allan W. Jones, Owner and Richard Jones." The debtor's name was Allan W. Jones. The filing officer indexed the agreement only under the name "The Tape Shack". In finding that the name listed as the debtor was seriously misleading, the court stated:

> [T]he name of debtor is set forth as being "DBA. The Tape Shack, Allan W. Jones, Owner and Richard Jones." Is this a minor error that is not seriously misleading? A lawyer should have no difficulty in wading through this maze. Obviously, the debtor is Allan W. Jones d/b/a The Tape Shack and Richard Jones and this should be indexed under Allan W. Jones and Richard Jones. But offices of the County Register of Deeds, operating under limited funds, cannot afford clerks with legal training. If one asks, can a clerk be misled by the designating of debtor's name as above set forth, the pragmatic answer must be yes, as this security agreement was not in fact properly indexed.

*Id.* at 252.

All of the foregoing cases illustrate that in determining whether an error in a financing statement is seriously misleading, each case must be decided upon its own facts.

### C

■ Returning now to the facts in the instant case, the court must determine whether the errors in the financing statements were seriously misleading. In making this determination, the court must consider whether or not the errors caused the filing officer to index the financing statements under a name so dissimilar to the

debtor that a diligent creditor searching under the debtor's true name could not be expected to discover the security interests. A related question is whether the filing officer nevertheless should have indexed the financing statements under the name, Service Lawn & Power, Inc., despite any errors in the financing statements.

■ This case differs from those cases dealing with erroneous filings under trade names in that the financing statements here listed the debtors as individuals d/b/a Service Lawn & Power, Inc. In reality, Service Lawn & Power, Inc. was not a trade name of individual debtors, but was the true name of the actual debtor. Because the initials d/b/a (doing business as) preceded the listing of Service Lawn & Power, Inc. in the financing statements, the corporate debtor was designated as a mere trade name of individual proprietors. The fact that "Inc." was part of the purported trade name does not alter this conclusion.

In *In re Causer's Town & Country Super Market,* 2 U.C.C.Rep.Serv. 541 (Bankr. N.D.Ohio 1965), the bankruptcy court was faced with a situation not unlike the one presented in this case. There as here, the debtor corporation was designated as a name under which individuals listed as debtors were doing business. In finding that the designation of the debtor's name in the recorded mortgage was misleading, the court stated:

> The recorded mortgage ... was an instrument executed by the parties with due formality under the law as it existed at that time, and told the public that a lien had been perfected against "Robert Causer and Grace Causer dba Causer's Town & Country Super Market, Inc." Many individuals do operate businesses under names which end with the word "Company" or "Co." or "Inc." even when they are not incorporated. The public has a right to believe that this recorded document means what it says. The public has been advised by the use of the

to the business. A personal creditor would not necessarily be aware of the business or trade name, and thus may not discover securi-

ty interests filed solely under the business name.
*Id.* at 796.

initials dba that these two individuals have been doing business under that trade name. Since a corporation is a separate legal entity under the law, failure to use the correct name given to it by the state, identifying it as an artificial corporate entity, cannot be lightly excused. The mortgage record did not notify other creditors that there was a lien against the Corporation.

*Id.* at 543.

It is obvious that the errors in the financing statements here caused the filing officer to index the statements under the individual's name rather than under the corporate name. It is also obvious that the name Chares F. Weir bears no similarity to the name of the true debtor, Service Lawn & Power, Inc. Thus, the errors in the financing statements were seriously misleading unless the filing officer was also under a duty to index the financing statements under the purported trade name. If he were, then the creditor could rely upon the rule that a secured party does not bear the risk of an improper filing or indexing by the filing officer. *See McMillin v. First Nat'l. Bank & Trust Co. of Ponca City (In re Fowler),* 407 F.Supp. 799 (W.D.Okla. 1975).

The duties of the filing officer are set out under section 9–403(4) of the Uniform Commerce Code enacted in Tennessee at Tenn.Code Ann. § 47–9–403(4) (Supp.1987). That section provides:

(4) Except as provided in subsection (7) a filing officer shall mark each statement with a consecutive file number and with the date and hour of filing (or where microfilm, photocopy and other approved methods of recordation are in use, the same may be so recorded) and shall hold the statement, record, microfilm, or other photographic copy thereof for public inspection. In addition the filing officer shall index the statement according to the name of the debtor and shall note in the index the file number and the address of the debtor given in the statement.

Section 47–9–403(4) only requires the filing officer to index filing statements under the true name of the debtor. It does not require filing under assumed or trade names. *See Barton v. ITT Diversified Credit Corp. (In re Skinner),* 22 U.C.C.Rep.Serv. 1286, 1292 (Bankr.W.D.Mich.1977) (identical statutory provision found not to require filing under trade name).

Another section of the code bearing upon this issue is section 9–402(7) of the Uniform Commercial Code enacted in Tennessee at Tenn.Code Ann. § 47–9–402(7) (Supp.1987). That section provides in part:

(7) A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names....

Comment 7 to section 9–402(7) of the Uniform Commercial Code addresses the purpose of that provision:

Subsection (7) undertakes to deal with some of the problems as to who is the debtor. In the case of individuals, it contemplates filing only in the individual name, not in a trade name.... Trade names are deemed to be too uncertain and too likely not to be known to the secured party or person searching the record, to form the basis for a filing system.

U.C.C. § 9–402(7) comment 7 (1972).

Indeed, where a trade name has been listed alongside the true name of the debtor, at least one court has characterized the trade name as mere surplusage. *See Barton v. ITT Diversified Credit Corp. (In re Skinner),* 2 U.C.C.Rep.Serv. at 1291.

In the instant case, the filing officer fulfilled his duties under section 47–9–403(4) of the code by filing the financing statements under what appeared to be the true name of the debtor.[7] The failure of the filing officer to index the financing statements under the name Service Lawn & Power, Inc., was due directly to the error

---

**7.** For purposes of the decision here, the court need not consider whether the filing officer erred in failing to index the financing statement in the name of the other purported debtor, Marqueta Joann Weir.

by Belarus in listing that name as a trade name. Such error, under the facts of this case, was seriously misleading.

In its brief, Belarus relies upon *Warner/Elektra/Atlantic Corp. v. Sounds Distributing Corp. (In Matter of Sounds Distributing Corp.)*, 42 B.R. 274 (Bankr.W. D.Pa.1984). Under the facts of that case, the initial security agreement was entered into between the creditor and debtor "Norton L. Kalinsky, d/b/a/ Sounds Distributors." Financing statements were filed under the names "Norton L. Kalinsky, d/b/a/ Sounds Dist. Corp." and "Norton L. Kalinsky, d/b/a/ Sounds Distributors." Subsequently, amendments to the financing statements were filed listing the debtor's name as "Sounds Distributing Corporation." The issue discussed by the court in *Sounds Distributing Corp.* concerned amendments to financing statements following a change in a debtor's name. The court noted that while an amendment to the Pennsylvania Code required a secured party to amend a financing statement which became misleading because of a subsequent change in the debtor's name or structure, the prior version of the code, in effect at the time, contained no such requirement. In apparent dictum the court stated that even under the more stringent version of the amended code, amendments to the financing statements were unnecessary because the financing statements designating debtor as "Norton L. Kalinsky, d/b/a Sounds Dist. Corp." and "Norton L. Kalinsky, d/b/a Sounds Distributors" were not seriously misleading to those creditors in search of encumbrances of "Sounds Distributing Corporation." The court made such a finding without stating how such financing statements were indexed by the filing officer under Pennsylvania law.

To the extent that the factual conclusion stated in *Sounds Distributing Corp.* differs from the conclusion reached herein, this court remains of the opinion that under the facts presented here, the errors in designating the name of the debtor in the financing statements were seriously misleading. Likewise, the signatures on the financing statements were misleading. The only signatures which appeared for the debtors were those of Marqueta Joann Weir and Charles F. Weir. The financing statements were not signed "Service Lawn & Power, Inc., by Charles F. Weir, president." The designation, "Pres.", beside the signature of Charles F. Weir was not sufficient to cure the misleading information contained in the financing statements regarding the name of the debtor.

Consequently, the financing statements in this case were fatally defective and not sufficient to perfect the security interest of Belarus in the collateral here involved. An order will enter in accordance with these findings of fact and conclusions of law.

## ORDER

This case is before the court upon the trustee's action to avoid the lien of Belarus Machinery, Inc. on certain collateral securing its claim against the debtor, Service Lawn & Power, Inc.

In accordance with a memorandum filed herewith which constitutes the court's findings of fact and conclusions of law pursuant to Rule 7052 of the *Bankruptcy Rules*, it is ORDERED that the defendant's interest in the collateral securing its claim against the debtor is unperfected and subordinate to the rights of the trustee.

It is further ORDERED that the trustee holds the proceeds from the sale of the collateral here involved free and clear of any interest of the defendant.

The clerk will set a hearing on the trustee's "Counterclaim" which was severed from the trustee's action to avoid the lien.