In re SILVER DOLLAR, LLC, Debtor.

First Community Bank of East
Tennessee, Plaintiff,

v.

David H. Jones, Chapter 7
Trustee, Defendant.

Bankruptcy No. 06–50568.
Adversary No. 07–5042.

United States Bankruptcy Court,
E.D. Tennessee.

April 4, 2008.

Rick J. Bearfield, Esq., Bearfield & McClellan, Johnson City, TN, for First Community Bank of East Tennessee.

Michael W. Ewell, Esq., Frantz, McConnell & Seymour, LLP, Knoxville, TN, for David H. Jones, Chapter 7 Trustee.

## MEMORANDUM

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

This adversary proceeding is before the court on the cross-motions for summary judgment filed by the chapter 7 trustee David H. Jones ("Trustee") and First Community Bank of East Tennessee (the "Bank"). At issue is whether financing statements filed by the Bank under the registered, assumed name of a debtor, "Silver Dollar Stores, LLC," rather than its organizational name, "Silver Dollar, LLC," sufficiently names the debtor in accordance with Tennessee Code Annotat-

ed § 47–9–503(a)(1). The issue is relevant because a seriously misleading error in naming the debtor renders the Bank's security interest unperfected and therefore inferior to the interest of the Trustee exercising rights and powers of a lien creditor under 11 U.S.C. § 544(a). As discussed below, the court concludes that the financing statements filed by the Bank do not comply with § 47–9–503(a)(1), but that an issue of material fact remains as to whether the Bank's error in naming the debtor is seriously misleading as defined by Tennessee Code Annotated § 47–9–506. Accordingly, the parties' motions for summary judgment will be denied. This is a core proceeding. See 28 U.S.C. § 157(b)(2)(A) and (K).

I.

With a single exception discussed below, the parties have stipulated to the relevant facts. On January 21, 2003, the Debtor in the present case was organized as a limited liability company under the laws of the state of Tennessee under the name "Silver Dollar, LLC." A few days later, on January 30, 2003, the Debtor applied to the Tennessee Secretary of State to adopt the assumed name "Silver Dollar Stores, LLC," which was then registered by the Secretary of State. As set forth in the stipulations, the Tennessee Secretary of State assigned the same organizational control number to the Debtor and to its registered, assumed name.

On September 30, 2004, the Debtor executed two promissory notes in favor of the Bank evidencing a $550,000 loan and a $500,000 loan. Concomitantly with the execution of the notes, the Debtor executed a commercial security agreement, granting the Bank a security interest in certain of the Debtor's real and personal property to secure repayment of the loans. Both the notes and the security agreement referred

to and were executed by the Debtor in its assumed name, Silver Dollar Stores, LLC. On October 7, 2004, the Bank filed with the Tennessee Secretary of State a UCC–1 financing statement bearing file no. 304–057061 and listing the debtor as Silver Dollar Stores, LLC.

On February 8, 2005, the Debtor executed a new promissory note in favor of the Bank, replacing the $500,000 note and increasing the amount of the second loan to $1,000,000. On February 14, 2005, the Bank filed with the Tennessee Secretary of State a UCC–3 amendment, file no. 205–003697, evidencing the increased indebtedness under the Debtor's assumed name. On October 13, 2005, the Debtor executed another promissory note in favor of the Bank, evidencing a new, $50,000 loan. On February 13, 2006, the parties executed a loan modification agreement, modifying the $1,000,000 loan by increasing the principal amount to $1,300,000, and similarly executed a new commercial security agreement granting the Bank a security interest in certain of the Debtor's real and personal property. The Bank then filed on February 23, 2006, an additional UCC–1 financing statement with the Tennessee Secretary of State, bearing file no. 206–009743. The Debtor's name was listed as "Silver Dollar Stores, LLC" on each of these documents.

The Bank did not advance any new funds to the Debtor after February 2006. On June 21, 2006, the Bank filed with the Tennessee Secretary of State two UCC–1 financing statements listing the Debtor as Silver Dollar, LLC.

On July 10, 2006, an involuntary chapter 7 bankruptcy petition was filed against the Debtor, and this court entered an order for relief on August 9, 2006. Mr. Jones was appointed as chapter 7 trustee. On June 11, 2007, the Bank commenced the present adversary proceeding against the Trustee, seeking declaratory judgment that its security interest in the Debtor's personalty is superior to that of the Trustee's. In his answer, the Trustee denied this assertion, contending that the Bank's security interest is not perfected because the financing statements were listed under the Debtor's assumed name rather than its legal name. Pursuant to the parties' agreed discovery plan filed August 8, 2007, the parties' pleadings were deemed amended to include a counterclaim by the Trustee to avoid as a preference under § 547 of the Bankruptcy Code the Bank's filing of the UCC–1 financing statements on June 21, 2006, within the 90 days prior to the bankruptcy filing, and the Bank's answer in denial thereof, including its assertion of all available affirmative defenses. Both parties have now filed motions for summary judgment and stipulations of fact, along with memoranda of law.

## II.

■ Although not cited, both the complaint and answer in this adversary proceeding implicitly make reference to 11 U.S.C. § 544(a)(1) which gives the bankruptcy trustee the rights and powers of, and the ability to avoid any transfer of property of the debtor that is voidable by, a judicial lien creditor. *See* 11 U.S.C. § 544(a)(1); *First Am. Nat'l Bank v. Miller (In re Miller)*, 286 B.R. 334, 342 (Bankr.E.D.Tenn.1999). To the extent that the financing statements filed by the Bank are ineffective to perfect its security interest, the Bank's interest is avoidable by the Trustee and the Trustee, as a judicial lien creditor, takes priority. *See* Tenn. Code Ann. § 47–9–317(a)(2)(A) ("A security interest . . . is subordinate to the rights of . . . a person that becomes a lien creditor before . . . the security interest . . . is perfected [.]").

Under Tennessee law, a financing statement is sufficient only if it provides three

necessary items of information: (1) the name of the debtor; (2) the name of the secured party; and (3) the collateral covered by the financing statement. Tenn. Code Ann. § 47–9–502(a). In the case of a registered organization, a financing statement sufficiently provides the name of the debtor "only if the financing statement provides the name of the debtor indicated on the public record of the debtor's jurisdiction of organization which shows the debtor to have been organized." Tenn. Code Ann. § 47–9–503(a)(1). "A financing statement that provides only the debtor's trade name does not sufficiently provide the name of the debtor." Tenn.Code Ann. § 47–9–503(c). As explained in the Official Comment:

> The requirement that a financing statement provide the debtor's name is particularly important. Financing statements are indexed under the name of the debtor, and those who wish to find financing statements search for them under the debtor's name. Subsection (a) explains what the debtor's name is for purposes of a financing statement. If the debtor is a "registered organization" (defined in Section 9–102 so as to ordinarily include corporations, limited partnerships, and limited liability companies), then the debtor's name is the name shown on the public records of the debtor's "jurisdiction of organization"....
>
> ....
>
> [This statute] reflects the view prevailing under former Article 9 that the actual individual or organizational name of the debtor on a financing statement is both necessary and sufficient, whether or not the financing statement provides trade or other names of the debtor....

Tenn.Code Ann. § 47–9–503 cmt. 2.

The Trustee argues in his motion for summary judgment that the Bank's financing statements do not sufficiently list the name of the Debtor because it sets forth the Debtor's assumed name, Silver Dollar Stores, LLC, rather than the name under which it was organized, Silver Dollar, LLC. According to the Trustee, the Debtor's assumed name is just a trade name, which under § 47–9–503(c) is undeniably insufficient.

The Bank, however, rejects the Trustee's assertion that a registered, assumed name is simply a trade name. The Bank observes that a limited liability company in Tennessee may elect to adopt an assumed name, see Tenn.Code Ann. § 48–207–101(d), and upon approval by the secretary of state, may transact business using its assumed name for five years. Tenn.Code Ann. § 48–207–101(d)(3)–(4) and (e)-(g). The Bank maintains that because the Debtor's assumed name is registered with the Tennessee Secretary of State, the Debtor has two names and both meet § 47–9–503(a)(1)'s requirement of a "name ... indicated on the public record of the debtor's jurisdiction of organization...." The Bank states that the Tennessee Code gives no further instruction regarding what the phrase "name indicated in the public record" means, but cites a Kentucky statute dealing with limited liability companies that states the " '[n]ame of record with the Secretary of State' means any real, fictitious, reserved, registered, or assumed name of a business entity." Ky Rev. Stat. Ann. § 275.015(17).

In response, the Trustee argues that a registered organization has only one true name, its actual organizational name. He notes that § 47–9–503(a)(1) references "*the* name of the debtor indicated on the public record," and asserts that the use of the word "the" evidences only one name. The Trustee maintains that this intention is

confirmed by the official comment that "the actual individual or organizational name of the debtor on a financing statement is both necessary and sufficient." T.C.A. § 47–9–503 Cmt. The Trustee rejects the Bank's reference to a Kentucky statute, arguing that it is contrary to the expressed intent of the Tennessee legislature, as set forth in the plain language of § 47–9–503(a)(1) and the official comment. Lastly, the Trustee proffers a policy argument, stating that the Bank's interpretation of § 47–9–503(a) would place an undue burden on subsequent creditors, requiring them to both *know* and *search* the UCC records under each assumed name of a debtor before extending credit.

Unfortunately, the court has been unable to locate any cases that address the precise issue raised here, whether a financing statement filed under a debtor's registered, assumed name satisfies § 47–9–503(a)(1). This subsection is new, added to the Tennessee Code as part of the 2000 amendments revising Article 9 of the Uniform Commercial Code. Previously, there was no statutory guidance as to what was meant by the requirement that the financing statement "name" the debtor, other than the general statement that "[a] financing statement sufficiently shows the name of the debtor if it gives the individu-

al, limited liability company, partnership, or corporate name of the debtor, whether or not it adds other trade names or names of partners." Tenn.Code Ann. § 47–9–402(7) (1999). Generally, it was understood that the name of a debtor was its "true" or legal name, *see Brown v. Belarus Machinery, Inc. (In re Service Lawn & Power, Inc.),* 83 B.R. 515, 517 (Bankr. E.D.Tenn.1988), although minor mistakes in naming the debtor were forgiven unless they were seriously misleading. *See* Tenn. Code Ann. § 47–9–402(8) (1999) ("A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.").[1]

Looking strictly at the language of § 47–9–503(a)(1), it must first be noted that contrary to the Bank's argument, the statute does not simply refer to the name of the debtor indicated in the public records of the debtor's state of organization. To the contrary, the statute specifies "the name of the debtor indicated on the *public record ... which shows the debtor to have been organized.*" This "which shows" clause modifies and defines "public record." Thus, when the defining clause is applied to the phrase "public record" it is

1. As explained by Judge John C. Cook in *Service Lawn & Power:*

Much litigation has arisen due to defects in listing the debtor's name on financing statements. Not surprisingly, many of the cases in this area have dealt with financing statements erroneously filed in a trade name of the debtor rather than in the debtor's true name. In those situations many courts have found such errors seriously misleading, reasoning that where a financing statement is filed and indexed under the debtor's trade name rather than the debtor's true name, a creditor looking for security interests under the true debtor's name cannot be expected to discover the financing statement indexed under the debtor's trade name.

On the other hand, there does appear to be a recognized exception to the rule that to be effective a financing statement must be filed in the debtor's *true name* rather than the debtor's trade name. It has been stated that even though a financing statement is erroneously filed under the debtor's trade name, such error is not seriously misleading where the debtor's trade name and the debtor's true name are so substantially similar that a diligent creditor upon searching under the true name would likely discover the filing.

*In re Service Lawn & Power, Inc.,* 83 B.R. at 517–18 (citations and footnote omitted).

evident that the statute is not referring to just any public record that indicates the debtor's name, but instead to the public records that establish the debtor's organization. *See Lawrence County Educ. Ass'n v. Lawrence County Bd. of Educ.*, 244 S.W.3d 302, 309 (Tenn.2007) ("When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application."). Applying this reading to the facts at hand, the name of the debtor indicated on the public record of Tennessee "which shows the debtor to have been organized" would be the Debtor's organizational name, Silver Dollar, LLC, not its later assumed name Silver Dollar Stores, LLC. And, while reluctant to decide an issue as important as the one at hand on the Tennessee legislature's use of the article "the" in the statute rather than "a," this court agrees with the Trustee that "the" suggests one single name. *Id.* ("In construing legislative enactments, we presume that every word in a statute has meaning and purpose; each word should be given full effect if the obvious intention of the General Assembly is not violated by so doing.").

■ Similarly, this reading is confirmed by the official comment. As quoted above, the comment states that "the actual ... organizational name of the debtor on a financing statement is ... necessary ... whether or not the financing statement provides trade *or other names* of the debtor...." Tenn.Code Ann. § 47–9–503 cmt. 2. (emphasis added). While the phrase "actual organizational name"[2] is not defined in the Tennessee Code, again the words suggest the name given to the debtor at the time it was organized or established, rather than a name it later assumed, even if that assumed name is properly registered with the state. And, even if a registered, assumed name is not a trade name as the Bank argues, the comment clearly indicates that *all* names other than the debtor's organizational name, not just trade names, are insufficient.[3]

In this regard, the court does not find determinative that a limited liability company may transact business in Tennessee using its assumed name. *See* Tenn.Code Ann. § 48–207–101(d)(3)-(4) and (e)-(g). Tennessee law permits an LLC to use up to five assumed names at a time, *see* Tenn. Code Ann. § 48–207–101(d)(3). Considering § 47–9–503(a)(1) and its reference to

---

**2.** As previously quoted, the exact phrase in the official comment is "actual individual or organizational name of the debtor." It is not clear if "actual" modifies only "individual" or if it also describes "organizational," but the answer is irrelevant. Regardless of whether the phrase, when applied to an entity other than an individual, means "actual organizational name" or simply "organizational name," both phrases suggest the debtor's "name at birth" so to speak, assuming no subsequent name amendments.

**3.** Neither the term "trade name" nor "assumed name" is defined in title 47 of the Tennessee Code which pertains to commercial instruments and transactions. However, as used in chapters 201–248 of title 48 of the Tennessee Code, which addresses limited lia-

bility companies, "assumed name" is defined as "any name used by the LLC, other than the LLC's true name." Tenn.Code. Ann. § 48–207–101(d)(1). Although the term "true name" is undefined, the statute pertaining to an LLC registering an assumed name provides that the application filed with the secretary of state must set forth the "the true LLC name" and "the state or country under the laws of which [the LLC] is organized." Tenn. Code Ann. § 47–207–101(d)(2)(A) and (B). This language suggests that the true LLC name is its organizational name. It follows then that if an assumed name is *any* name other than the LLC's true name, that the term "assumed name" encompasses "trade names."

the public record which shows the debtor to have been organized, this court finds it doubtful that the Tennessee legislature intended a subsequent creditor seeking to learn a debtor's secured obligations would be required first to determine all assumed names registered by the debtor and then to perform searches under each name.

The court finds support for this interpretation of § 47–9–503(a)(1) in law review articles and cases from other jurisdictions that have adopted this same provision of Revised Article 9. Although, admittedly, none of these cases address an assumed name that had been registered, these cases and articles support the proposition that § 9–503(a) of the Uniform Commercial Code contemplates the use of a single legal name for a registered organization. *See In re Jim Ross Tires, Inc.*, 379 B.R. 670, 679 (Bankr.S.D.Tex.2007) (Applying Texas law, the court concluded that because the debtor's name as indicated by the Texas Secretary of State was "Jim Ross Tires, Inc.," the name on the financing statement, "Jim Ross Tires, Inc., dba HTC Tires & Automotive Centers," was insufficient.); *In re John's Bean Farm of Homestead, Inc.*, 378 B.R. 385, 386–87 (Bankr.S.D.Fla. 2007) (In considering whether financing statement sufficiently set forth name of corporate debtor, parties stipulated that financing statement, which did not list the "Debtor's actual name of incorporation," was not the debtor's correct name.); *In re FV Steel & Wire Co.*, 310 B.R. 390, 393 (Bankr.E.D.Wis.2004) ("One of the mantras espoused by the experts [in drafting

Revised Article 9] was the necessity of using the debtor's correct legal name, not a trade name or nickname."); *Clark v. Deere & Co. (In re Kinderknecht)*, 308 B.R. 71, 75 (10th Cir. BAP 2004) (Construing Kansas law, the panel observed, in dictum, that UCC § 9–503(a) requires the legal name of debtor-entities to be used in order for a financing statement to be effective.) [4]; *Miller v. Van Dorn Demag Corp. (In re Asheboro Precision Plastics, Inc.)*, No. 04–2043, 2005 WL 1287743, *6 (Bankr. M.D.N.C. March 1, 2005) (Revised Article 9 requires filing of financing statement under debtor's legal name rather than trade name.).

As explained in the *American Bankruptcy Law Journal*:

> An entirely new provision, Rev. § 9–503, is devoted to the issue of names. In the case of a registered organization, the debtor's name is the name as shown on the public records of the jurisdiction that shows the debtor to have been organized there. The provision enables filers and searchers to rely with certainty on the debtor's *exact* name obtained from an objective and publicly available source.

Harry C. Sigman, *The Filing System Under Revised Article 9*, 73 Am. Bankr.L.J. 61, 72–73 (Winter 1999) (emphasis added). *See also* 68A Am.Jur.2d *Secured Transactions* § 156 (2008) ("When either of the parties to a secured transaction does business under a trade or assumed name, the

---

**4.** The issue before the bankruptcy appellate panel in *Kinderknecht* was whether a financing statement filed under an individual debtor's nickname satisfied UCC § 9–503(a). Noting that the section requires legal, as opposed to trade or other names for debtor-entities, the panel concluded that § 9–503(a) mandates that an individual debtor be listed by his or her legal name, rather than a nickname. The panel held that the clear test of a

debtor's legal name was supported by four practical considerations: (1) it simplified the drafting of financing statements; (2) it simplified the parameters of UCC searches; (3) it avoided litigation as to the commonality or appropriateness of a debtor's nickname; and (4) obtaining a debtor's legal name is not difficult or burdensome for a lending creditor. *In re Kinderknecht*, 308 B.R. at 75–76.

use of that name to identify the party in the agreement is proper. However, a financing statement that provides only the debtor's trade name does not sufficiently provide the name of the debtor."); Margit Livingston, *A Rose By Any Other Name Would Smell As Sweet (Or Would It?): Filing and Searching In Article 9's Public Records,* 2007 BYU L.Rev. 111, 128 (2007) ("For registered organizations, such as corporations and limited liability companies, the debtor's correct name is clearly, and solely, its official registered name."); Meghan M. Sercombe, Note, *Good Technology and Bad Law: How Computerization Threatens Notice Filing Under Revised Article 9,* 84 Tex. L.Rev. 1065, 1067 (2006) ("A new provision [in Revised Article 9] stipulates that trade names are not sufficient to identify business entities and requires that the name of the debtor as reflected in its articles of organization be provided on the financing statement."); 9B Hawkland UCC Series § 9–503:5[Rev] (2007) ("To allow filing under assumed names would place a burden on searching creditors and other interested parties not intended by those who drafted the UCC. Certainly to require the use of the real name of the debtor meets one of the purposes of the Act, to simplify, clarify and modernize the law governing commercial transactions."). Based on the foregoing, the court concludes that the filing of a financing statement under a debtor's assumed name, even if that name is registered, does not meet the requirements of Tenn.Code Ann. § 47–9–503(a)(1).

### III.

■ The failure of the Bank to list the Debtor's organizational name in its financing statements is not necessarily fatal to the perfection of the Bank's security interests. As noted, under old Article 9, minor errors in naming a debtor in a financing statement were disregarded unless they caused the financing statement to be seriously misleading. This provision, former Tennessee Code Annotated § 47–9–402(8), has been carried forward into Revised Article 9, Tennessee Code Annotated § 47–9–506(a), along with a couple of important additions. The new statute provides in its entirety the following:

(a) A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.

(b) Except as otherwise provided in subsection (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with § 47–9–503(a) is seriously misleading.

(c) If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with § 47–9–503(a), the name provided does not make the financing statement seriously misleading.

(d) For purposes of § 47–9–508(b), the "debtor's correct name" in subsection (c) means the correct name of the new debtor.

Tenn.Code Ann. § 47–9–506.

As explained in the Official Comment:

Subsections (b) and (c), which are new, concern the effectiveness of financing statements in which the debtor's name is incorrect. Subsection (b) contains the general rule: a financing statement that fails sufficiently to provide the debtor's name in accordance with Section 9–503(a) is seriously misleading as a matter of law. Subsection (c) provides an exception: If the financing statement nevertheless would be discovered in a

search under the debtor's correct name, using the filing office's standard search logic, if any, then as a matter of law the incorrect name does not make the financing statement seriously misleading. A financing statement that is seriously misleading under this section is ineffective even if it is disclosed by (i) using a search logic other than that of the filing office to search the official records, or (ii) using the filing office's standard search logic to search a data base other than that of the filing office.

Tenn.Code. Ann. § 47–9–506 cmt. 2.

The prior statute did not define when or under what circumstances a financing statement with minor errors was "serious misleading." As a result, courts disagreed over whether to adopt a bright-line rule that gave clear guidance or one that allowed fact-intensive inquiry in the interest of equity and fairness. Sercombe, 84 Tex L.Rev. at 1067. The majority of courts, including those in Tennessee,[5] chose the latter course, employing a "reasonably diligent searcher" standard whereby the reviewing court determined on a case-by-case basis whether a reasonable search by a diligent creditor would have disclosed

the non-conforming financing statement, despite the incorrect debtor's name. *Id.;* *In re John's Bean Farm of Homestead, Inc.,* 378 B.R. at 389. This standard often led to contradictory results, depending on whether the court believed that multiple searches under numerous variations or spellings of the debtor's name were necessary to satisfy the reasonableness requirement. *Id.*

■ Revised Article 9 adopts in § 9–506(c) a statutory definition of "seriously misleading" that replaces the former reasonableness standard with a bright-line test of a single search under the debtor's correct name utilizing the filing office's standard search logic. Sercombe, 84 Tex L.Rev. at 1067. "A financing statement is effective if a computer search run under the debtor's correct name produces the financing statement with the incorrect name. If it does not, then the financing statement is ineffective as a matter of law." *In re John's Bean Farm of Homestead, Inc.,* 378 B.R. at 390. As explained in the *American Bankruptcy Law Journal:*

---

**5.** The cases applying Tennessee law in this regard were: *In re Service Lawn & Power, Inc.,* 83 B.R. at 519 (To determine whether the errors in the financing statements were seriously misleading, "the court must consider whether or not the errors caused the filing officer to index the financing statements under a name so dissimilar to the debtor that a diligent creditor searching under the debtor's true name could not be expected to discover the security interests.") *In re DG & Assocs., Inc.,* 9 B.R. 94, 96 (Bankr.E.D.Tenn.1981) (The question is not how wrong a debtor's name is on a financing statement but whether or not it will be found. A reasonable search may be more than searching under one name.) *First Nat. Bank of Shelbyville v. Tenn. Consol. Coal Co.,* No. 01A01–9208–CV–00326, 1993 WL 241289, *5 (Tenn.App. July 2, 1993) ("[T]he dispositive question is usually whether or not a reasonable search under the debtor's

true name would uncover the filing.... The resolution of the question cannot be made simply by comparing two names, but must be settled with an eye toward the intended operation of the UCC indexing system in which the errors are manifest."); *Sovran Bank v. Transamerica Comm. Fin. Corp.,* No. 01–A–01–9110–CH00382, 1992 WL 81436, *7 (Tenn.App. April 24, 1992) ("[T]he use of an incorrect debtor's name in a financing statement will not be considered seriously misleading as long as it will not prevent a reasonably diligent searcher from discovering the financing statement."); *First Nat'l Bank of Lacon v. Strong,* 278 Ill.App.3d 762, 215 Ill. Dec. 421, 663 N.E.2d 432, 434–35 (1996) ("When a debtor's name is inaccurately listed on a financing statement, the critical inquiry is whether a reasonably prudent subsequent creditor would be likely to discover the prior security interest.").

Revised Article 9 carefully balances the interests of searchers and filers. The statutes recognize that filers will make errors despite exercise of care and despite the assistance derived from well-designed new forms, so the statute does not provide an absolute requirement of perfection. At the same time, it does not burden searchers with the obligation to dream up every potential error and name variation and perform searches under all possibilities. Revised Article 9 allows a searcher to rely on a single search conducted under the correct name of the debtor and penalizes filers only for errors that result in the nondisclosure of the financing statement in a search under the correct name.

Sigman, 73 Am. Bankr.L.J. at 73 (footnotes omitted); *see also Pankratz Implement Co. v. Citizens Nat'l Bank,* 281 Kan. 209, 130 P.3d 57, 68 (2006) ("[T]he primary purpose of the revision of the name requirement is to lessen the amount of fact-intensive, case-by-case determinations that plagued earlier versions of the UCC, and to simplify the filing system as a whole."); *In re Kinderknecht,* 308 B.R. at 75 ("The intent to clarify when a debtor's name is sufficient shows a desire to foreclose fact-intensive tests, such as those that existed under the former Article 9 of the UCC, inquiring into whether a person conducting a search would discover a filing under any given name. Requiring a financing statement to provide a debtor's legal name is a clear cut test that is in accord with that intent."); Livingston, 2007 BYU L.Rev. at 128–29 (Because the secured party has the means to find out the debtor's correct name before filing, "it is more efficient and equitable to require accuracy by the filing creditor than to demand 'reasonable diligence,' however defined, from searching creditors.").

Returning to the case at hand, the parties' memoranda did not include a discussion of Tennessee Code Annotated § 47–9–506. Nor did the parties' stipulations address whether a search of the records of the filing office under the debtor's correct name, Silver Dollar, LLC, using the filing office's standard search logic, would disclose the financing statements filed by the Bank under the name Silver Dollar Stores, LLC. Accordingly, subsequent to the filing of stipulations and memoranda in this adversary proceeding, the court entered an order on February 20, 2008, directing the parties to file within ten days either an additional stipulation of fact in this regard or a joint statement indicating that they were unable to make such a stipulation and whether a genuine issue of material fact remained.

Notwithstanding the order, the parties did not file either a stipulation or a joint statement indicating that a genuine issue of material fact remained. The Trustee filed a statement on February 29, 2008, that his counsel had "determined through a review of the Tennessee Secretary of State's standard search logic ... that a search of Silver Dollar, LLC using the standard search logic would **not** disclose the financing statement filed by the [Bank] in the name of Silver Dollar Stores, LLC." Counsel for the Trustee also indicated that he had discussed the matter with counsel for the Bank, who had advised him that he would not stipulate to this fact. The Bank's counsel did advise the Trustee's counsel that he had ordered a UCC–11 search and that he would be filing the results, with the court to draw its own conclusions. Consistent with this representation, counsel for the Bank filed on February 27, 2008, the results of the UCC search without setting forth any statement as to the Bank's position regarding what the results revealed.

The documents filed by the Bank indicate that Kroll Document Filing and Retrieval submitted to the Tennessee Secretary of State a completed UCC–11 form, seeking a search under the name "Silver Dollar LLC." The documents presumably produced by the Tennessee Secretary of State in response to the search request were attached. The documents reference the two financing statements filed by the Bank on June 21, 2006, during the preference period under the name Silver Dollar, LLC. They do not disclose the earlier financing statements filed by the Bank in the name of Silver Dollar Stores, LLC, specifically the financing statement filed on October 7, 2004, bearing file no. 304–057061, the amendment filed on February 14, 2005, file no. 205–003697, or the financing statement filed on February 23, 2006, bearing file no. 206–009743.[6]

The Trustee argues that the court should treat the documents filed by the Bank as an admission by the Bank that a search of the filing office's records under the name of Silver Dollar, LLC using the filing office's standard search logic would not disclose the financing statements filed by the Bank in the name of Silver Dollar Stores, LLC. Alternatively, the Trustee contends that the court should resolve the issue in his favor based upon his statement, the Bank's search results, and the state's search logic, as set forth in Tennessee Comprehensive Rules and Regulations 1360–8–5.04.

The Rules of the Tennessee Department of State for UCC Search Requests and Reports set forth the following general requirements:

The filing officer maintains for public inspection a searchable index for all records of UCC documents that provides for the retrieval of a record by the name of the debtor and by the file number of the initial financing statement to which the record relates and which associates with one another each initial financing statement and each filed UCC document relating to the initial financing statement.

Tenn. Comp. R & Regs. 1360–8–5–.01.

As to the name searched in a search request, the rules state:

A search request should set forth the full correct name of a debtor or the name variant desired to be searched and must specify whether the debtor is an individual or an organization.... The full name of an organization shall consist of the name of the organization as stated on the articles of incorporation or other organic documents in the state or country of organization or the name variant desired to be searched. A search request will be processed using the name in the exact form it is submitted.

Tenn. Comp. R & Regs. 1360–8–5–.02(1)(a).

With respect to the search process itself, the rules provide:

Search results are created by applying standardized search logic to the name presented to the filing officer by the person requesting the search. Human judgment does not play a role in determining the results of the search. The following, and only the following rules are applied to conduct searches.

---

**6.** The attached documents do include two financing statements filed by other secured creditors listing Silver Dollar Stores, LLC as the debtor. However, these documents appear to have been disclosed by the search because one financing statement listed Silver Dollar, LLC as the debtor and Silver Dollar Stores, LLC as an additional debtor; the second financing statement originally listed Silver Dollar Stores, LLC as the debtor, but then an amendment set forth the debtor's name as Silver Dollar, LLC.

(a) There is no limit to the number of matches that may be returned in response to the search criteria.

(b) No distinction is made between upper and lower case letters.

(c) Punctuation marks and accents are disregarded.

(d) Words and abbreviations at the end of a name that indicate the existence or nature of an organization as set forth in the "Ending Noise Words" list as promulgated and adopted by the International Association of Corporation Administrator's [sic] as from time to time, are disregarded (e.g., company, limited, incorporated, corporation, limited partnership, limited liability company or abbreviations of the foregoing).

(e) The word "the" at the beginning of the search criteria is disregarded.

(f) All spaces are disregarded.

(g) For first and middle names of individuals, initials are equated with all names that begin with such initials, and no middle name or initial is equated with all middle names and initials.

(h) After taking the preceding rules into account to modify the name of the debtor requested to be searched and to modify the names of debtors contained in unlapsed financing statements in the UCC information management system, the search will reveal only names of active debtors that, as modified, exactly match the name requested, as modified.

Tenn. Comp. R & Regs. 1360–8–5–.04.

Consideration of these search rules, along with the results of the Bank's search request, suggests that the Trustee is correct, that the financing statements filed by the Bank listing Silver Dollar Stores, LLC as the debtor are seriously misleading because they would not be disclosed in a search of the records of the filing office using the debtor's correct name, Silver Dollar, LLC.[7] However, the court has no

---

7. This result would be consistent with the decisions from other jurisdictions. For example, in *Official Comm. of Unsecured Creditors v. Suna Bros. Inc. (In re Tyringham Holdings, Inc.)*, 354 B.R. 363, 368 (Bankr.E.D.Va. 2006), the creditor's failure to include "Inc." at the end of the debtor's name in a financing statement rendered the statement seriously misleading and ineffective to perfect the creditor's security interest in the collateral, because the search logic employed by the commonwealth of Virginia does not disregard "Inc." as a "noise word." Similarly in *Host America Corp. v. Coastline Fin., Inc.*, No. 2:06CV5, 2006 WL 1579614, *4 (D.Utah May 30, 2006), because a search under the debtor's legal name "K.W.M. Electronics Corporation" failed to disclose a financing statement listing the debtor as "K W M Electronics Corporation," the financing statement was seriously misleading. *See also Pankratz Implement Co.*, 130 P.3d at 68 (spelling of debtor's name as "Roger House" rather than legal name "Rodger House" rendered financing statement ineffective); *Receivables Purchasing Co. v. R & R Directional Drilling, LLC*, 263 Ga.App. 649, 588 S.E.2d 831, 833

(2003) (Because a search under the debtor's correct name "Network Solutions, Inc." did not disclose a financing statement that incorrectly listed the debtor as "Net work Solutions, Inc.," the secured creditor was unperfected.); *In re Jim Ross Tires, Inc.*, 379 B.R. at 679 (The financing statement listing debtor as "Jim Ross Tires, Inc. dba HTC Tires & Automotive Centers" rather than correct name of "Jim Ross Tires, Inc." was seriously misleading.); *cf. In re Summit Staffing Polk County, Inc.*, 305 B.R. 347, 355 (Bankr. M.D.Fla.2003) (court concluded that although Revised Article 9 requires only single search, a searcher is still required to use reasonable diligence in examining the results of the search where in Florida the results produce an alphabetical listing of debtors).

There has been some criticism of the exactitude required by the various states' search logic, which has resulted in virtual elimination of UCC § 9–506(a)'s safe harbor for minor errors. *See Host America Corp.*, 2006 WL 1579614, at *5 ("[T]he legislature elected to leave the fate of those creditors that fail to comply with the strict naming requirement of [UCC 9–503] in the hands of those that devel-

evidence before it that the search results filed by the Bank were produced in accordance with the state's standard search logic as § 47–9–506(c) requires. Granted, Rule 1360–8–5–.04 does state that "[s]earch results are created by applying standard search logic. . . ." Yet the rules also provide that reports created in response to a search request shall include, inter alia, "[i]dentification of the filing officer and the certification of the filing officer required by the UCC." Rule 1360–8–5–.05. The results filed by the Bank do not identify the filing officer or include any such certification. Nor are the Bank's results otherwise authenticated in accordance with Federal Rule of Evidence 901. This absence of authentication or of any evidence confirming that the search results was produced utilizing the standard search logic would not, in and of itself, be sufficient to create a genuine issue of material fact, absent some evidence to the contrary suggesting that the search results were not produced by the state's standard search logic. While no such evidence has been produced by the parties, the court takes judicial notice of the fact that the Tennessee Secretary of State has a website whereby UCC searches may be conducted online, *http://www.ja.state.tn.us/sos/iets3/ieuc/PgUCCSearch.jsp.* *See* Fed.R.Evid. 201; *In re John's Bean Farm of Homestead, Inc.,* 378 B.R. at 394 n. 18 (taking judicial notice of Florida's UCC Registry website). An online search under the debtor's correct name, Silver Dollar, LLC, does in fact reveal the Bank's financing statements filed under the name Silver Dollar Stores, LLC. *See id.*

A copy of the search page generated by the court and the results produced are attached to this memorandum as Exhibit A and B. As the search rules require, the court searched under the name "Silver Dollar," disregarding the ending noise word "LLC." *See* Rule 1360–8–5–.04(d) and (h). As Exhibit B indicates, the two financing statements listing the debtor as Silver Dollar Stores, LLC, filed by the Bank on October 7, 2004, and February 13, 2006, and bearing file nos. 304–057061 and 590–013815, respectively, were disclosed. And, the financing statement filed by the Bank on February 14, 2005, no. 205–003697, as an amendment to the October 7, 2004 statement, no. 304–57061, was revealed as history when the former was highlighted on the screen, as Exhibit C indicates.

The court notes that the online search page, Exhibit A, sets forth the following disclaimer: "Please note that any search results you may obtain by using this online feature do not necessarily reflect results which would be obtained in an official search by the Division of Business Services using the rules for search requests and reports as provided in the Uniform Commercial Code Rules, Chapter 1360–8–5." By stating that an online search may produce different results than an "official search" using the rules for search requests, the disclaimer suggests that an online search does not use the standard

---

op and manage the filing office's search logic."); Livingston, 2007 BYU L.Rev. at 149–150 (Revised Article 9's single search standard, which demands an "extremely high degree of exactitude" in setting forth the debtor's name, especially where the debtor is a registered organization, "is somewhat at odds with Article 9's overall pro-secured party tenor."); Sercombe, 84 Tex L.Rev. at 1069 ("[M]ost states have adopted rigid computer

programs (search logic) that are unforgiving of even minor errors. Although there is some variation among the states, almost all utilize search logic that supplies only exact matches to the debtor name entered. . . . The combined effect of the new legal standard and the strict search logic is to functionally eliminate the safe harbor for minor errors in the debtor's name, despite the savings provision in § 9–506(a).")

search logic. Nonetheless, in light of the disparity between the results produced online and the results filed by the Bank, and the absence of any proof that the results filed by the Bank are from an official search using the filing office's standard search logic, the court concludes that a genuine issue of material fact remains as to whether "a search of the records of the filing office under the debtor's correct name using the filing offices' standard search logic ... would disclose [the financing statements filed by the Bank under the name Silver Dollar Stores, LLC]." [8] Tenn. Code. Ann. § 47–9–506(c).

## IV.

Based on the foregoing, the court concludes that financing statements filed under the Debtor's assumed name rather than its correct, legal name do not sufficiently name the debtor in accordance with Tennessee Code Annotated § 47–9–503(a)(1). Summary judgment is inappropriate because a genuine issue of material fact remains as to whether the Bank's incorrect listing of the debtor's name renders its financing statements seriously misleading and therefore ineffective as a matter of law. An order will be entered in accordance with this memorandum denying the parties' summary judgment motions.

---

**8.** If it is established at trial that the financing statements filed by the Bank under the name Silver Dollar Stores, LLC are seriously misleading, they will be ineffective as a matter of law to perfect the Bank's security interest and the Bank's interest will be subordinate to that of the Trustee, except to the extent that the Bank became perfected by its subsequent filings under the debtor's correct name, although those filings may be subject to avoidance as a preference as the Trustee contends. The filings under the debtor's incorrect name will be invalid even though they are readily discoverable by an internet search on the Tennessee Secretary of State's official website. Thus, the notice purpose of the filings will have been met, *see In re Bates,* 35 B.R. 475, 480 (Bankr.M.D.Tenn.1983) ("[T]he primary purpose of a financing statement is to provide third parties with notice that a security interest *may* exist in the collateral identified in the statement."), yet the Bank's interest will still be unperfected. The comment to § 47–9–506 states that "[a] financing statement that is seriously misleading under this section is ineffective even if it is disclosed by ... using a search logic other that of the filing office to search the official records...." While this result would not be surprising if the search were conducted by someone other than the filing office, it seems somewhat inequitable when a search by the filing office, albeit by means of its website, produces the required notice.